(No. 41632.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JACK CANADAY *et al.,* Appellants.

*Opinion filed September 30, 1971.*

JOHN F. ADAMS, of Quincy, for appellants.

WILLIAM J. SCOTT, Attorney General, of Spring-field, and ROBERT E. UTTER, State's Attorney, of Mt. Sterling, (FRED G. LEACH and THOMAS J. IMMEL, Assistant Attorneys General, of counsel,) for the People.

MR. JUSTICE WARD delivered the opinion of the court:

A jury in the circuit court of Brown County found the defendants, Jack Canaday, Marjorie Christeson, and Robert L. Stanton, guilty of theft and burglary in violation of the Criminal Code. (Ill.Rev.Stat. 1967, ch.38, pars. 16—1, 19—1.) Stanton was sentenced to concurrent terms in the penitentiary of three to eight years on the theft conviction and three to ten years on the burglary conviction. Concurrent sentences of one to five years in the penitentiary were imposed on Canaday. Marjorie Christeson was placed on probation for a period of five years. The constitutional questions raised gave this court jurisdiction on direct appeal under our then governing rule. Ill.Rev. Stat. 1969, ch. 110A, par. 603.

On November 27, 1966, at approximately 2:30 A.M., Mrs. Garnet Bradbury, of Versailles, was awakened by noises coming across the highway that passed in front of her home. From her bedroom window the witness observed two men dressed in dark clothing break into a hardware store and begin to remove a number of television sets. The sets were placed in the back seat and in the trunk of an automobile, which the witness described as a yellow

Ford product with a black top. Although only two men could be seen at this time, the presence of a third burglar was shown when the witness noticed that the tail lights of the auto went on while the two men were outside of the car. The two men entered the vehicle from the right side in departing. A short time later the same car returned to the scene and the two men re-entered the hardware store and removed more television sets. The automobile departed, heading south.

After the first observation by Mrs. Bradbury her husband reported the burglary to the sheriff of Brown County, who arrived at the scene after the second visit by the thieves. He at once sent a radio report of the burglary to the various law enforcement agencies in the surrounding counties. The report was that there had been a burglary and theft of television sets and the auto used in the burglary was described. At about 3:40 A.M., two Jacksonville police officers, who had received the radio report, observed the defendants in Jacksonville, which is south of Versailles, in an auto which matched the description of the car used in the burglary. After the driver of the car had pulled to the side of the road and stopped at the officers' order, the driver, who was the defendant Canaday, alighted from the car and approached the police car. After a brief conversation with Canaday the officers walked to the defendants' vehicle and there observed television sets in the back seat of the automobile, partially covered by a blanket.

The three defendants were placed under arrest and searched. An automatic revolver was taken from Canaday. Another revolver was found under the front seat of the car after the officers observed Stanton, who was in the front passenger position, place something under the seat. The officers then radioed the Morgan County sheriff's office for assistance and, after other officers had arrived, the defendants were taken to the sheriff's office. The car occupied by the defendants, which had been locked and

left on the side of the highway by the officers, was driven to the sheriff's office a short time later by one of the officers after he had received permission to do so from the defendant Stanton, the owner of the car.

The sheriff of Brown County and the owner of the hardware store arrived at the Morgan County sheriff's office about one hour after the arrest and the television sets were removed from the back seat of the car. At this time the trunk of the car was also searched and more television sets, as well as two crowbars, a flashlight and some gloves were found.

The first of numerous contentions of error asserted by the defendants is that the trial court erred in denying their motion to suppress the articles seized in the search of their automobile at the Morgan County sheriff's office about an hour after their arrest. The fourth amendment was thereby violated, they argue, because the search was not substantially contemporaneous with the arrest and was not in the immediate vicinity of the arrest. The defendants concede that under the circumstances the two officers had probable cause to place them under arrest. Their position is that once their auto had been moved from the highway a search warrant was necessary for its search. We cannot agree.

The holding of the Supreme Court in *Chambers v. Maroney, 399 U.S. 42, 26 L.Ed.2d 419, 90 S.Ct. 1975,* is applicable here. There the court observed that its decisions had long distinguished between a warrantless search of a motor vehicle and a warrantless search of a house or an office. Citing *Carroll v. United States, 267 U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280,* and later decisions, the court noted that under circumstances which would not authorize a warrantless search of a house or office, an automobile, because of its mobility, may be searched without a warrant while it is on the highway if there is probable cause to believe that it contains materials that the officers are entitled to seize.

In *Chambers,* a station wagon and four men in it were

stopped by police. Earlier there had been a robbery of a service station by two men, one of whom wore a green sweater and the other a trench coat. Passers-by had seen a station wagon containing four men speed away from a parking lot near the service station. One of the men was wearing a green sweater. The description of the vehicle and the two robbers was broadcast over the police radio and the police stopped a station wagon answering the radioed description and containing four men. One of the men was wearing a green sweater and there was a trench coat in the car. The occupants were arrested and the car was driven to the police station. There it was searched and police found revolvers and the card of a service station attendant who had been robbed a week earlier. The court held that the warrantless search of the car after it had been taken to the police station was not in violation of the fourth amendment. There was probable cause to arrest the occupants of the station wagon and just as obviously probable cause to search the car for guns and stolen money. Here, too, we consider there was probable cause to arrest the occupants of the vehicle and to search the car. The Supreme Court rejected the contention that the search without a warrant at the police station was improper. It was observed that the auto which could have been properly searched on the highway could as well be searched without a warrant at the police station, because the probable cause to search it continued. The movement of the vehicle to the station did not create any duty to secure a search warrant. The court said: "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." (399 U.S. at 52, 26 L.Ed.2d at 428.) We judge *Chambers* forecloses any question here regarding the search. We would observe that this court in *People v. Hanna, 42 Ill.2d 323,* a case closely

resembling the one here, on the same rationale rejected the argument the defendants here have advanced.

The Supreme Court recently, in *Coolidge v. New Hampshire, 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022*, found warrantless searches of an auto to have been objectionable but under completely distinguishable circumstances. The court drew a distinction between *Chambers* which corresponds to the case here, and the question in *Coolidge*. It said: "The rationale of *Chambers* is that *given* a justified initial intrusion, there is little difference between a search on the open highway and a later search at the station. Here, we deal with the prior question of *whether* the initial intrusion is justified. For this purpose, it seems abundantly clear that there is a significant constitutional difference between stopping, seizing, and searching a car on the open highway, and entering private property to seize and search an unoccupied, parked vehicle not then being used for any illegal purpose." *Coolidge v. New Hampshire, 403 U.S. 443, n. 20.*

Related to the preceding argument is the claim that the defendants were deprived of due process of law because, they allege, they were not furnished with an inventory of the articles seized as required by statute. (Ill.Rev.Stat. 1969, ch. 38, par.108–2.) No actual prejudice because of this is claimed. We have held that where there was no return of a search warrant, such failure to comply with the statute's requirement did not invalidate the search warrant. *(People v. York, 29 Ill.2d 68, 71.)* Analogizing, a failure to comply after a warrantless search with a statutory direction to furnish an inventory of the seized materials will not in the absence of prejudice invalidate an otherwise proper search and seizure. The Criminal Code pertinently provides that "No warrant shall be quashed nor evidence suppressed because of technical irregularities not affecting the substantial rights of the accused." Ill.Rev.Stat. 1969, ch. 38, par. 108–14.

Too, it is contended that the defendants' right to due process was violated because the trial judge, prior to trial, ordered the return to the owner of some of the television sets which had been seized from the defendants. This was contrary, it is said, to section 108—11 of the Criminal Code (Ill.Rev.Stat. 1969, ch. 38, par. 108—11), but no authority is presented to support the claim that a release of seized property to its owner violates due process. Section 108—11 authorizes the judge before whom seized articles are returned to "enter an order providing for their custody pending further proceedings." We do not interpret this section as prohibiting the court from releasing seized property. Were the court forbidden to enter such an order, owners of perishable property which had been stolen and recovered through a seizure would suffer total loss. In the case of other property, owners would be deprived of the use and right to dispose of it during the pendency of what are often protracted court proceedings. *Cf. United States v. Alexander (7th cir.), 415 F.2d 1352, 1357.*

Another argument of the defendants, which they did not raise in the trial court, is that they were deprived of their constitutional right to confront the witnesses against them and that their rights to a fair trial and due process of law were infringed because the prosecution failed to introduce into evidence all of the television sets that had been taken from the automobile. No specific prejudice is claimed because the People did not offer all of the sets into evidence. In all, 13 sets were seized from the defendants. Two of the sets were offered and received into evidence. In addition, photographs of all of the stolen sets were admitted into evidence. The defendants objected to the admission of the photographs on the sole ground that they were not the "best evidence" of the sets, a ground of objection which it appears has been prudently abandoned here, for the best evidence rule has no applicability under these circumstances. (IV Wigmore, Law of Evidence, 3d ed. 1940, sec. 1181.) An objection to evidence based upon

a specified ground waives all grounds not specified *(People v. Brengettsy, 25 Ill.2d 228, 232)* and a ground of objection not presented in the trial court, as was the case here, will not be considered on review. We should add that in any event there was no error under the circumstances in the People's not introducing all of the physical evidence at the trial. See *People v. Ristau, 363 Ill. 583; United States v. Alexander (7th cir.), 415 F.2d 1352, 1357.*

It is also said that the trial court erred in denying the defendants' motions for separate jury trials. The defendants Stanton, Canaday and Christeson were jointly indicted for burglary, and a joint indictment for theft was returned against Stanton and Canaday. Christeson was separately indicted for theft. It is clear from decisions of this court that if one or more defendants are jointly indicted they are to be tried together, unless the trial court in the exercise of sound discretion considers that separate trials should be granted. *(People v. Gendron, 41 Ill.2d 351, 356; People v. Ross, 41 Ill.2d 445, 461,* cases cited.) For the trial court in weighing a motion for separate trials "The paramount inquiry is whether the defenses are of such an antagonistic nature that a severance is imperative to insure a fair trial. [Citations.] " *(People v. Gendron, 41 Ill.2d at 356-357.)* The defenses of the defendants here were entirely consistent with one another. The defense of alibi, offered in the testimony of each defendant, was that Stanton and Canaday at the request of the husband of Christeson drove from Alton to the vicinity of Jacksonville to assist the defendant Christeson. Her auto had broken down there, it was claimed, as she was driving to Quincy to visit a friend. She had phoned her husband for help, she testified, and Canaday and Stanton, both of whom were known to her, had been sent by the husband to assist her. (One of the arresting officers contradicted this testimony. He testified that Mrs. Christeson, to explain her presence in the defendants' auto, said she was fortunate in having Canaday and Stanton happen by and offer her a ride. Mrs.

Christeson denied the conversation.) There was testimony that a man called "Joe" or "Brown", who did not testify, also accompanied Stanton and Canaday, and that, when they arrived at the scene of the breakdown, he began to work on Christeson's car. It was testified by Stanton that he drove to a coffee shop nearby, where he bought 13 television sets for $800 from two men he met there. He had become acquainted with the men while serving a term in the Missouri State prison. This transaction took place at about 3:30 A.M. Stanton did not know the names of the men, but recalled one was known as Luther or Luke. According to the defense, Stanton then returned to Christeson's car and picked up Canaday and Christeson. "Joe" drove the Christeson auto back to Alton. Shortly after the defendants had left this area of the breakdown they were stopped by the Jacksonville police. The defenses thus raised cannot be characterized as "antagonistic." The trial court did not abuse discretion in denying the motions for separate trials. We are not dissuaded from this conclusion by an additional claim of Christeson. It is that her motion for a severance should have been allowed on the ground that she would sustain prejudice in a joint trial with Stanton, who had a criminal record that could be used to impeach his testimony. No authority is offered to support her position. Where we have found this argument presented, it was rejected. In *United States v. Johnson, 298 F. Supp. 58, at 63,* it was said that "introduction of criminal records of a co-defendant is not *per se* a ground for severance." Too, in *United States v. Hanlin, 29 F.R.D. 481, 485,* the court observed that the prejudice which is feared may be prevented by a proper instruction. No such instruction here was requested.

There was error, the defendants say, in the trial court's denying what was labeled by the defendants as a "motion for discharge of the jury." As a ground for the motion it was claimed that there had been unauthorized communications with the jury prior to the commencement

of the trial. On December 12, 1967, the jury was selected and sworn and the cause was held over for trial on the following day. Then, on stipulation of the parties and in open court, the jury was instructed by the trial judge to return for trial on December 27, 1967. The postponements were required because of the hospitalization of Stanton. On December 27, Canaday and Christeson appeared and answered ready for trial. The jury was not present and the record contains no explanation of its absence. Because Stanton did not appear the trial court continued the cause until the next day. On December 28, 1967, and on January 3, 1968, the jury was not present in court. The trial did begin on January 4, 1968, with all defendants present. The defendants argue that because the jury failed to appear in court on December 27, 1967, December 28, 1967, and January 3, 1968, and because the jury had not been instructed in open court not to appear on those dates, it must be inferred that there were unauthorized communications with the jury. Before a jury verdict will be set aside because of an unauthorized communication with the jury, it is necessary for a defendant to show prejudice. *(People v. Williams, 38 Ill.2d 115, 126; People v. Georgev, 38 Ill.2d 165, 177.)* The record shows from the judge's remarks in denying the motion that the communication with the jury concerned only when the jury was to appear for trial. There was no prejudice to the defense from this unexceptional instruction. The defendants present no persuading reasons for abandoning the requirement of a showing of prejudice by the defendant, as they urge us to do. In *People v. Georgev, 38 Ill.2d 165, 177,* and *People v. Potts, 403 Ill. 398,* this court declared it would not gratuitously assume prejudice to a defendant.

The defendants Canaday and Christeson next contend that the trial court erred in denying their motion for a continuance which was filed on December 11, 1967. On that date attorney Merle C. Bassett, who had been retained by Canaday and Christeson on December 6, 1967, entered

an appearance on behalf of these defendants. Canaday and Christeson had earlier been represented, together with Stanton, by attorney Edward Groshong. The case had then been pending for over a year. After a hearing on December 12, 1967, the trial judge denied the motion for a continuance and ordered that the trial begin the following day. However, because of illness of Stanton the trial did not begin until January 4, 1968, some 23 days later. Our court has said: "The granting of a continuance to permit preparation for a case, or for the substitution of counsel, necessarily depends upon the particular facts and circumstances surrounding the request, and is a matter resting within the sound judicial discretion of the trial court." *(People v. Solomon, 24 Ill.2d 586, 589;* see also *People v. Davis, 45 Ill.2d 514; People v. Latimer, 35 Ill.2d 178, 181.)* Too, it cannot be said that a motion for continuance has been improperly denied, unless it appears that the refusal to grant additional time has in some way embarrassed the accused in the preparation of his defense and thereby prejudiced him. *(People v. Coleman, 45 Ill.2d 466, 469.)* Here, attorney Bassett and Canaday and Christeson had 23 days from the denial of their motion for a continuance to the beginning of the trial. In this period, their attorney was able to present several motions on their behalf, including motions for severance, for discharge of the jury, for a list of witnesses and to quash the indictments. The record shows that at trial the attorney appeared to be thoroughly prepared and conducted his representation with diligence and skill. Under these circumstances, we cannot say any prejudice to the concerned defendants appears.

The defendants charge, too, that they were deprived of their constitutional right to a speedy trial. For purposes of determining whether this constitutional assurance has been observed there is no absolute or precise standard of time within which an accused must be brought to trial. *(People v. Love, 39 Ill.2d 436, 442.)* In determining

whether there has been a denial of the right, factors to be considered include: "the length of the delay; the reasons for the delay; the prejudice to the defendant; and whether the accused may be considered as having waived the right." *(People v. Henry, 47 Ill.2d 312, 316.)* These factors are to be considered in combination. *People v. Tetter, 42 Ill.2d 569.*

Here, the interval complained of approximated 13 months from the time of arrest, November 27, 1966, to the commencement of the trial, January 4, 1968. Most of this period, however, was consumed with consideration and disposition of motions filed by the defendants, who had been released on bond. Holdings that a delay can be so prolonged that a presumption of prejudice may arise (see *People v. Henry, 47 Ill.2d 312, 316-317)* have no applicability under these circumstances. There is no claim of actual prejudice and no actual prejudice can be found in the record. Too, the defendants must be considered as having waived the right to a speedy trial because of their failure to demand to be brought to trial. *(People v. Henry, 47 Ill.2d 312.)* Canaday and Christeson never did enter a demand for trial, and Stanton, who with Canaday and Christeson had made numerous motions, raised the question only on December 8, 1967, three days prior to the first trial date. The trial postponements after December 12, when the jury was selected, were due to Stanton's illness.

Viewing the sum of these circumstances, we do not find that the constitutional right to a speedy trial was violated.

Error was committed, the defendants declare, when the trial court refused to order the production of a handwritten report prepared by William Slowinski of the Illinois Bureau of Criminal Identification and Investigation, who appeared as an expert witness for the prosecution. The witness testified that he had performed certain tests on a crowbar that had been seized from the trunk of

the defendants' automobile and that certain marks on the crowbar in his opinion matched scratch marks found on the lock system of the door to the burglarized hardware store. He was of the opinion that the bar had made the marks on the lock system. He testified that he had prepared a written report of the results of his tests but that it had not yet been typed. At trial, defense counsel during cross-examination requested that the report be produced for possible use in impeachment, but the trial court denied the motion.

We recently said in *People v. Allen, 47 Ill.2d 57, 59:* "The prosecution on demand is required to furnish an accused for possible impeachment use specific statements in its possession or control which were made by a State's witness, which have been shown to exist and which are in the witness's own words or substantially verbatim. *(People v. Durso, 40 Ill.2d 242; People v. Neiman, 30 Ill.2d 393; People v. Wolff, 19 Ill.2d 318.)* This obligation extends to police reports and even intergovernmental records. (See *People v. Cagle, 41 Ill.2d 528; People v. Golson 37 Ill.2d 419; People v. Moses, 11 Ill.2d 84.)*" Absent a showing of privilege by the prosecution and where relevancy and competency have been established, such a statement should be delivered to the defendant for his examination and possible use. *(People v. Wolff, 19 Ill.2d 318.)* The People, relying on *People v. Hester, 39 Ill.2d 489,* contend that the report is not a "statement" within the rule announced in *Wolff.* In *Hester,* however, the report sought consisted only of notations jotted down by crime laboratory technicians at the time they performed the concerned tests. The report here, according to the witness's testimony, was a summary of the test results. We do not consider *Hester* as exempting statements of this nature from the requirements of production. Indeed, the defendant in *Hester* was provided with copies of the crime laboratory test results. We judge that the trial court should have ordered the production of the witness's report for the

defendants' examination and possible use by way of impeachment.

In *People v. Wolff, 19 Ill.2d 318, 328,* this court considered the consequence of the withholding of materials which should have been produced at the request of the accused. It was said that "this court will look to the entire record to see if the rejected evidence could have reasonably affected the verdict *(People v. Terrell, 262 Ill. 138),* and will refuse to disturb the judgment where guilt is shown beyond a reasonable doubt or where, upon the evidence, the jury could not have reached a different verdict. [Citations.]" Viewing the evidence in the record, the substance of which appears herein, we consider that the guilt of the defendants is shown beyond a reasonable doubt.

Arguing basically that she was not identified at the scene of the burglary, Marjorie Christeson protests that her conviction was in violation of her right to due process inasmuch as there was no evidence against her. One might say, considering the record, that the claim that there was no evidence against this defendant appears to be exuberant. The defenses, including that of Christeson, presented questions of credibility which were for the jury to assess. We judge that the evidence on which the jury acted was sufficient to establish guilt beyond a reasonable doubt. See *People v. Reynolds, 27 Ill.2d 523,* for a factual situation with close resemblance to the one here.

For the reasons given, the judgment of the circuit court of Brown County is affirmed.

*Judgment affirmed.*