THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOSEPH BARKER DuPREE, Defendant-Appellant.

Second District   No. 75-496

Opinion filed May 27, 1977.

Ralph Ruebner and Joshua Sachs, both of State Appellate Defender's Office, of Elgin, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (Phyllis J. Perko and Barbara Preiner, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant was found guilty by a jury of both robbery and armed robbery in connection with the February 4, 1975, robbery of a grocery store in Rockford. A judgment of conviction was entered upon the armed robbery charge and defendant was sentenced to 4-12 years imprisonment. The only issue raised on this appeal is whether defendant is entitled to a new trial because he was denied a fair and impartial jury.

Jury selection in this case began on the morning of May 27, 1975. There is no transcript of the court proceedings in connection with the voir dire examination of the jurors. It appears that at least 11 jurors had been accepted before the noon recess but that no jurors had been sworn to try the issues. During the noon recess there was an encounter in the ladies washroom between at least two of defendant's friends and at least two jurors. The defendant's friends reported the incident to the bailiff who in turn reported it to the court. The bailiff's report indicated that the

conversation concerned where the defendant lived, his work, and the association between the defendant and a friend who had been a spectator during the morning session. The bailiff's report of the identity of the jurors involved in the incident is as follows:

"She called her by name, [Mrs. A.], yes. She said there was another juror, but she couldn't identify her by name. That was in the same conversation, and other than that, she had on a dark blouse."

Mrs. A. was thereafter called into chambers and admitted conversing with persons who identified themselves as friends of the defendant. She specifically denied asking questions concerning the age or occupation of the defendant. When asked by defense counsel if any other ladies were involved in the incident, Mrs. A. replied:

"Whoever was in the John, I can't remember. There were two of us that were washing our hands and these kids were in there."

At the time the matter was brought to the court's attention the friends of the defendant were not in court and neither defense counsel nor anyone else suggested a recess until they could be located and questioned concerning the incident. Likewise, although it was apparent to all involved that there was at least one other juror in the restroom at the time, no further suggestions were made as to examination of any other jurors. With the consent of counsel, the court decided to excuse Mrs. A. from the jury. Defense counsel then suggested that perhaps the judge should explain why Mrs. A. had been excused to avoid any possible prejudice to the defendant. The court inquired what kind of explanation counsel desired, whereupon defense counsel stated, "Maybe it's best not to say anything * * *." Mrs. A. was excused but no explanation was made to the jury. The court inquired whether counsel had any further discussions or suggestions, whereupon defense counsel replied, "I think we can just go on and pick two more [jurors]."

The matter was not raised again until defendant's post-trial motion which stated, in part, that the defendant had been deprived of a fair trial before an impartial jury and that the verdict was the result of passion, bias and prejudice. At a court appearance on June 6, 1975, defense counsel acknowledged the fact that in connection with his motion for a new trial on this ground that he would have to put on some evidence as to what was said, if anything, by the particular juror whose identity had not previously been disclosed. The court indicated at that time he would like to know what the defense witness would say before any jurors were examined in connection with this matter. In another court appearance on June 16 defense counsel informed the court that he did have the witnesses and that he had just talked to them in connection with this matter. At that point he stated to the court, "Well, Your Honor, we know it is only one woman." His further statements indicate that it might involve

interviewing five or six of the women jurors. The matter was continued until June 19, at which time defense counsel was to present his testimony concerning this incident. On that date no defense witnesses appeared in court and the matter was continued to the following day. The transcript from June 20 indicates that defense counsel had arranged to have the three friends of the defendant who were involved in the incident appear. He stated to the court that the one witness who was the defendant's girlfriend had been called out of town in connection with the funeral of a relative and would not be back until June 23. He could not explain the absence of the other two witnesses. Further, he did not ask for any continuance to procure the witnesses, but instead made an offer of proof concerning his evidence on the matter of an impartial jury.

The offer of proof may be summarized as follows. Defendant's friends were in the restroom when two or three women of the jury came in. The previously accepted jurors were discussing the defendant generally. A juror or jurors made some mention concerning who the girls in the courtroom were because of some eye flashing back and forth between the defendant and the girls. One lady said something about wondering if they were friendly with the black man (the defendant) and if they were friendly with the white girl. At that point one of defendant's friends identified the white girl as the girlfriend of the defendant. Then the word "disgusting" was mentioned. As evidence to verify the incident, defendant's counsel read into the record parts of two letters written by the girlfriend to the defendant. The letters themselves are not included in the record. The first letter was written on May 27, the day on which the incident occurred. The letter stated, in part, that the author and one of the other girls were in the bathroom when,

> " * * * these ladies started shooting their mouth off about you and how 'it figured' you were black. Then they asked us your age, where you worked and how we knew you and so Kim said I was your girlfriend and one lady said 'That's disgusting'."

The letter then referred to the fact that they had reported it to the bailiff and gave the author's conclusion that the ladies in question were prejudiced.

The second letter was dated Wednesday, 10:30 a.m., and all parties concluded it was written on May 28. It stated, in part, that the girlfriend thought that they had done right about "that jury lady." Counsel continued,

> "Your Honor, I think that's the only reference to the woman juror, because at that point she does say a lady and she did tell the Bailiff and pointed out this woman and that particular juror was then excused, I think it was juror number 1."

Counsel's argument continued that if this conversation did take place, the

other ladies of the jury who were present certainly overheard it, and would wonder why the particular juror disappeared without any explanation. Counsel continued that the other jurors probably came to the conclusion that the defendant's friends told the judge that the excused juror was biased and had made some remarks. He concluded that the other jurors were also prejudiced and not open-minded because of the black-white relationship of the defendant and his girlfriend. Defense counsel agreed that the woman juror who made the comments about the defendant being black and the remark about the disgusting relationship was the excused juror.

After hearing further comments from both counsel for the defense and the prosecution, the court stated:

"THE COURT: At best it was an unfortunate circumstance. I thought at the time we had cleared it up rather substantially. I would let the record reflect that your comments and your statements that this young lady would testify to if she were here, and proceed on that theory that that is the state of your evidence.

I can't conclude even from what you say, that we had jurors here who could have done anything else in this case, except to find this young man guilty from the evidence.

In other words, I don't believe that there is any showing as I see it that there was any prejudice here.

After this incident occurred we dismissed the one juror. All the other jurors then took an oath and they would base their decision solely upon the evidence and so forth.

I do not believe we had a jury that was so contaminated that they did not render a fair and honest verdict. Therefore, as to that point the motion for a new trial is denied."

On this appeal defendant takes the position that this is a case involving a "juror's expression of serious racial and personal prejudice against the defendant." Defendant further argues that the court thus ruled because the evidence was so overwhelmingly against the defendant any alleged bias of the jurors was harmless error. Defendant further asserts that either the woman who made the offensive remarks or overheard them actually sat on the jury and that the persence of such a juror, "whose remarks may well have contaminated other jurors," denied the defendant a fair and impartial trial. In view of defense counsel's agreement in the trial court that the woman who made the offensive remarks was the woman who was excused from the jury, essentially what the defense is arguing is that there was bias merely from the fact that one or two other jurors overheard, or possibly overheard, the offensive remarks of the dismissed juror. The State takes the position that the defendant failed to sufficiently support his arguments of bias and prejudice of the jury, and that the

denial of a new trial was for this reason rather than because any possible prejudice was harmless error.

■■ We believe that the law in this State is clearly established that before a jury verdict can be set aside because of unauthorized communications to the jury the defendant must show that he was prejudiced thereby. (*People v. Canaday* (1971), 49 Ill. 2d 416, 275 N.E.2d 356; *People v. Hering* (1974), 23 Ill. App. 3d 507, 318 N.E.2d 757.) We have also read with close attention *People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705, which dealt specifically with a situation wherein a juror was challenged for cause instead of a motion for a new trial. In *Cole* the supreme court sought to dispel the misconception that a juror must be free from even the suspicion of bias or impartiality and noted specifically, "Mere suspicion of bias is not evidence." 54 Ill. 2d at 401, 415, 298 N.E.2d 705, 713.

■■ Our review of the evidence herein convinces us that what we have here is in fact mere suspicion of bias. The versions of the incident reported at the time by the bailiff and the excused juror contained no reference to the alleged offensive remarks. Assuming that the remarks of the excused juror did indicate racial prejudice, it does not necessarily follow that those who overheard the remarks would exhibit a similar racial prejudice. As the trial court pointed out in the statement denying the defendant's motion for a new trial, after the incident all the jurors took an oath that they would base their decision solely upon the evidence presented. There is no evidence whatsoever that any juror, including the juror or jurors who may have overheard the prejudicial remarks, violated this oath. On this basis we believe that the trial court properly denied any further inquiry into the matter, especially in view of the fact that the defense did not request any continuance for the purpose of securing the actual testimony of the witnesses and had apparently made no attempts to subpoena these witnesses or otherwise reduce their statements to sworn testimony.

We also accept the State's interpretation of the trial court's remarks concerning the lack of prejudice herein. In view of what we have stated above, however, even if defendant's interpretation of the statement were accepted, there would be no basis upon which to reverse the judgment of the trial court. For these reasons the judgment of the trial court is affirmed.

Affirmed.

RECHENMACHER, P. J., and WOODWARD, J., concur.