THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARGARET KINION, Defendant-Appellant.

Third District    No. 81-151

Opinion filed May 5, 1982.—Rehearing denied June 7, 1982.

Robert Agostinelli and Verlin R. F. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

James T. Teros, State's Attorney, of Rock Island (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Defendant Margaret Kinion was indicted for 63 counts of felony theft. After a jury trial in the circuit court of Rock Island, she was found guilty and sentenced to 63 concurrent 10-year terms of imprisonment.

The facts upon which the indictment was predicated are uncontroverted. In April 1976, defendant was hired as an account clerk by the City of Rock Island. In this capacity, she was involved with the city payroll and after receiving favorable job evaluations, she was promoted to city accountant in September 1977. In this capacity, defendant's primary responsibility was to post daily receipts in a cash journal. In September 1979, June Britton, who had responsibilities similar to those of defendant, called City Clerk William Tracey, Jr.'s attention to an irregularity she had discovered in the journal. A comprehensive audit followed. It established that defendant had manipulated the journal and appropriated approximately $14,000 in cash for her own use. It also established that she wrote herself 51 checks totalling over $50,000.

Defendant responded with an insanity defense. The evidence established that she had several times in the past been committed to institutions for psychiatric difficulties and was working with a psychiatric case worker up and through the period of the charges herein. Seven professionals testified at trial. Of the four who testified for the defense, three diagnosed defendant as schizophrenic and one as chronically psychotic. Dr. Bruce Danto stated that she could not discern right from wrong or conform her conduct to the law. Of the three who testified for the State, one diagnosed defendant as a severe hysteric, and two stated she had an antisocial personality. Dr. Truce Ordona and Dr. Werner Tuteur testified that defendant was legally sane at the times of the offenses. Additional facts will be presented in our discussion of the issues.

■■ The first of the eight issues presented for our review is whether those convictions for the appropriations of cash must be reversed as the State allegedly failed to prove the acts were done without authority. Defendant contends the lack of direct proof of this element of the crimes was fatal to

the State's case. While we recognize that section 16—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(a)) requires that a person must obtain or exert "unauthorized control over property" to commit theft, we find that the State met its burden in establishing this. Paul Berg testified that the only money which defendant was authorized to receive from the city was her paycheck, which was issued biweekly. It follows that the cash in question was taken without authority.

■■ The second issue is whether the convictions must be reversed as the defense counsel allegedly labored under a conflict of interest. The alleged conflict claim stems from the fact that defendant executed a note, deed, and mortgage in counsel's favor in return for his services. Defendant contends that counsel would thus be interested in establishing her capacity to execute these instruments while inconsistently attempting to establish her unfitness for trial and insanity defense. Unfitness for trial occurs when a defendant is unable to understand the nature and purpose of the proceedings against him or to assist in his defense. (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—10.) Legal insanity occurs when a defendant lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. (Ill. Rev. Stat. 1979, ch. 38, par. 6—2.) Capacity to contract requires that a party must be of "sufficient mental ability to appreciate the effect of what he is doing" and "be able to exercise his will with reference thereto." (*Thatcher v. Kramer* (1932), 347 Ill. 601, 609, 180 N.E. 434.) It is thus clear that three different standards are here involved, and a defendant could have the capacity to contract while being unfit for trial or legally insane. This being the case, we decline to adopt the *per se* conflict rule advocated by defendant. To adopt such a rule would mean that a *per se* conflict would arise retroactively in every case where a contract for the employment of private counsel had been entered into and thereafter an insanity defense was contemplated or raised. Actual prejudice must be shown. In this case defense counsel's representation of his client was vigorous, singleminded and diligent. No claim is made, and the record fails to demonstrate, that there were any deficiencies in the activities of defendant's counsel or any prejudice to her arising from the initial compensation arrangement and her representation.

■■ The third issue presented for our review is whether the trial court erred in not dismissing the indictment or, alternatively, severing its counts. Section 111—4(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 111—4(a)) provides:

> "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are

based on the same act or on 2 or more acts which are part of the same comprehensive transaction."

Defendant contends the charged offenses are not part of the same comprehensive transaction as they took place over several years and were effected by different techniques.

While there is language to the effect that joinder is not permitted "where the crimes occur several days apart * * *" (*People v. Hyche* (1978), 63 Ill. App. 3d 575, 578, 380 N.E.2d 373, 376, *aff'd* (1979), 77 Ill. 2d 229, 396 N.E.2d 6; *People v. Daniels* (1976), 35 Ill. App. 3d 791, 797, 342 N.E.2d 809, 813), *Hyche* cites *Daniels*, which in turn cites *People v. Pullum* (1974), 57 Ill. 2d 15, 309 N.E.2d 565. *Pullum* involved an armed robbery on September 4, 1970. On September 20, 1970, the defendant was stopped by police officers for running a red light. When the defendant failed to produce a license and explained the car was borrowed, the police ran a check and discovered it was stolen. A post-arrest search revealed cannabis. After setting out the statute, the court concluded:

> "Here the defendant was confronted with wholly unrelated charges. The crimes charged occurred 16 days apart, were wholly dissimilar, and contained no common elements. The only thread of continuity between the two offenses is that the defendant was in possession of marijuana and the 1970 Cadillac at the time of his arrest. The record does not indicate that the possession of marijuana at the time of the arrest for armed robbery was in any way connected with the armed robbery.
>
> We do not find, as did the appellate court, that the marijuana charge and armed-robbery charge are a part of the same comprehensive transaction, and we hold that the failure to grant the motion to sever constituted reversible error." (*People v. Pullum* (1974), 56 Ill. 2d 15, 18, 309 N.E.2d 565, 566.)

It can be seen that, while the court noted the 16 days between the crimes, the interval was not the basis of its holding. The *Hyche* court recognized this in stating that "we do not say that the mere passage or nonpassage of a certain amount of time is determinative of whether charges are properly joined * * *." (*People v. Hyche* (1978), 63 Ill. App. 3d 575, 578, 380 N.E.2d 373, 398.) We believe this is the better view and hold that, under the circumstances at bar, the time involved does not automatically eliminate the acts at bar from the category of a comprehensive transaction. We note parenthetically that a longer series of events has been so characterized. *Cf. People v. Clark* (1979), 71 Ill. App. 3d 381, 389 N.E.2d 911 (1971-1974), *appeal denied* (1980), 81 Ill. 2d 584.

■■ As for the utilization of different techniques, we note that a defendant

cannot insist that he not be put on trial for an indictment containing counts charging separate felonies unless it affirmatively appears that they are not parts of one and the same transactions, but are separate and distinct in law and in fact. (*Cf. People v. Stingley* (1953), 414 Ill. 398, 111 N.E.2d 548, *cert. denied* (1953), 345 U.S. 959, 97 L. Ed. 1379, 73 S. Ct. 945 (assault with intent to rape; intent to murder).) In the case at bar, defendant systematically converted funds from the city over a period of years. On some occasions she issued herself checks and on others she issued herself cash. We do not find this difference is fatal to the indictment.

While prosecutions of this nature would seem to be more appropriately initiated under section 111—4(c) of the Code (Ill. Rev. Stat. 1979, ch. 38, par. 111—4(c)), which requires acts or transactions "in furtherance of a single intention and design" rather than the "same comprehensive transaction" required by section 111—4(a) (Ill. Rev. Stat. 1979, ch. 38, par. 111—4(a)), we do not find the failure to initiate the action under the former provision mandates a reversal under the circumstances here presented.

■■ The final matter to be considered in our discussion of this third issue is whether the trial court erred in not severing the charges for purposes of trial. Severance is governed by section 114—8 of the Code (Ill. Rev. Stat. 1979, ch. 38, par. 114—8) providing:

> "If it appears that a defendant or the State is prejudiced by a joinder of related prosecutions or defendants in a single charge or by joinder of separate charges or defendants for trial the court may order separate trials, grant a severance of defendants, or provide any other relief as justice may require."

The benchmark by which the determination of prejudice is made in the more common instance involving co-defendants is whether defenses are so antagonistic that severance is imperative to require a fair trial. (*People v. Canaday* (1971), 49 Ill. 2d 416, 275 N.E.2d 356.) In the instant situation, no such benchmark is available, and we must determine whether defendant was prejudiced without such guidance.

Defendant contends she was prejudiced by the jury being confronted with "endless details", by the necessity of expert testimony regarding sanity on 60 days over a period of 33 months, and by the jury "simply throwing up their hands, forgetting about the individual charges." Considering the initial allegation of prejudice, severance would have unquestionably simplified the State's case in chief; however, the fact that defendant committed the acts in question was never challenged. The details concerning the matter of defendant's sanity would remain essentially the same whether presented to one jury or 63, which brings us to the second allegation of prejudice. The essence of the insanity defense was that de-

fendant was legally insane throughout the period in question. While the defense did not contend that defendant was so afflicted at all times, it specifically presented evidence that she was insane every time she converted funds. Thus the details of the defense would not be significantly altered, and the fact that 63 different days are involved is immaterial. As for the allegation of the jury ignoring the individual charges we find no substance to the argument.

An additional consideration is the transcription of testimony regarding the insanity defense covered over 1600 pages. Thus, the requested severance would necessarily result in a voluminous duplication of evidence. (See *People v. Sockwell* (1977), 55 Ill. App. 3d 174, 176, 371 N.E.2d 100, 102; *People v. Marbley* (1975), 34 Ill. App. 3d 434, 437, 340 N.E.2d 247, 249.) Considering this and the failure to establish that defendant was prejudiced, we do not find the trial court abused its discretion in denying the motion for severance.

■■ The fourth issue is whether the trial court erred in denying defendant's request for a jury trial determination of her fitness to stand trial. The right to a jury hearing is governed by section 104—12 of the Code (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—12):

"The issue of the defendant's [f]itness may be determined in the first instance by the court or by a jury. The defense or the State may demand a jury or the court on its own motion may order a jury. However, when the issue is raised after trial has begun or after conviction but before sentencing, or when the issue is to be redetermined under Section 104—20 or 104—27, the issue shall be determined by the court."

Defendant moved for a fitness hearing and the court, after a hearing on the merits of the motion, ruled that there was no *bona fide* doubt of her fitness to stand trial. On September 8, 1980, *voir dire* began, and a panel of four was selected. The following morning, defendant again moved for a fitness hearing. After a second hearing on the merits, the court found the requisite doubt but denied defendant's demand for a jury determination. The appropriateness of this ruling hinges on whether or not trial had begun.

The time as of which a trial is regarded as having commenced varies according to the construction and application of the statute in question. (See 75 Am. Jur. 2d *Trial* sec. 3 (1974).) For many purposes, trial is deemed to have begun when the process of jury selection begins. (*People v. Crawford Distributing Co.* (1979), 78 Ill. 2d 70, 397 N.E.2d 1362 (speedy trial); *People v. Heidelberg* (1975), 33 Ill. App. 3d 574, 338 N.E.2d 56, *appeal denied* (1976), 62 Ill. 2d 590 (removal to Federal court); *People v. Bey* (1971), 133 Ill. App. 2d 250, 272 N.E.2d 726 (change of venue); *Jordan v. Savage* (1967), 88 Ill. App. 2d 251, 232 N.E.2d 580

(assignment to magistrate).) Trial has not begun when potential jurors are simply brought into a courtroom. (*Cosmopolitan National Bank v. Goldberg* (1959), 22 Ill. App. 2d 4, 159 N.E.2d 1 (dismissal without prejudice).) For determining when jeopardy attaches, trial begins when a jury is empaneled and sworn (*People v. Friason* (1961), 22 Ill. 2d 563, 177 N.E.2d 230), or, by analogy, when the first witness has sworn and the court begins to hear evidence in a bench trial (*People v. Deems* (1980), 81 Ill. 2d 384, 410 N.E.2d 8, *cert. denied* (1981), 450 U.S. 925, 67 L. Ed. 2d 355, 101 S. Ct. 1378 (jeopardy attaches)).

In considering the question of the right to a jury at a fitness examination under the predecessor of the subject provision (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1), our supreme court noted that a prior statute (Ill. Rev. Stat. 1963, ch. 38, par. 104—2) provided for a jury if a doubt regarding fitness arose during trial. Citing the commentary to the predecessor provision (Ill. Ann. Stat., ch. 38, par. 1005—2—1, Council Commentary, at 220 (Smith-Hurd 1973)), the court concluded the disallowance of a jury determination once trial had begun was based on the desire to conserve judicial resources and to speed determination of the issue. (*People v. Manning* (1979), 76 Ill. 2d 235, 390 N.E.2d 903.) This desire is better effected by establishing the beginning of trial at an earlier, rather than later, point in the proceedings. We therefore hold that, for the purposes of section 104—12 of the Code (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—12), trial begins when the process of jury selection commences. The trial court accordingly committed no error in determining defendant's fitness from the bench.

The fifth issue presented for our review is whether the trial court erred in denying defendant's motion for a mistrial after she was found fit to stand trial. Defendant contends the court had not assured itself of her fitness during the first day of *voir dire*, and this was a denial of due process of law. At trial she contended that defense counsel's *voir dire* would have been influenced by his possession of a later-produced doctor's report. As a ground of objection not presented to the trial court will not be considered on review (*People v. Canaday* (1971), 49 Ill. 2d 416, 275 N.E.2d 356), and an objection cannot be urged on appeal on an entirely different basis than in the trial court (*cf. People v. Sawyer* (1969), 42 Ill. 2d 294, 251 N.E.2d 230, *cert. denied* (1969), 396 U.S. 928, 24 L. Ed. 2d 225, 90 S. Ct. 262 (objection to evidence)), we decline to address this issue.

■■ The sixth issue is whether defendant was denied a fair trial by two incidents of alleged prosecutorial misconduct. The first incident was a State's witness using a chart which summarized his diagnosis. Demonstrations using a blackboard which are similar to using a plat have been allowed. (*People v. Fisher* (1930), 340 Ill. 216, 172 N.E. 743; *People v.*

*Hamilton* (1980), 80 Ill. App. 3d 794, 400 N.E.2d 599); however, such a demonstration is not here involved. Even where a plat itself was used, a court has noted its use "was an endeavor to get before the jury the written testimony of the author * * *" concerning "matters that are readily understood from the oral testimony of witnesses." (*Hatcher v. Quincy Horse Railway & Carrying Co.* (1913), 181 Ill. App. 30, 35.) Likewise we here deal with a situation where the summarized matters were understandable from the oral testimony. While the court appropriately denied admission of the chart into evidence, as did the *Hatcher* trial court, the proffered exhibit still tended to memorialize the opinion testimony in question. We therefore find the court abused its discretion in allowing its use; however, in light of the extensive testimony and length of the trial, the impact of the chart was minimal. We therefore find the error harmless beyond a reasonable doubt.

■■ The second incident of alleged prosecutorial misconduct occurred after defense counsel suggested that a question was relevant because the jury had the right to know of the same witness' bias:

> "[Defense counsel]: It is relevant because if he is a biased examiner he shouldn't be testifying, or at least the jury ought to know.
>
> [State's Attorney]: You raised that on a motion to the Court and it was overruled.
>
> [The court]: Objection sustained."

Defendant does not raise on appeal the question of whether the trial court erred in not allowing defense counsel to elicit the fact the witness had publicly stated his opposition to the insanity defense. She rather contends the court erred in allowing the State to undercut the defense cross-examination by referring to a prior judicial ruling. As no objection was voiced at trial, and the matter was not included in defendant's post-trial motion, we find this contention has been waived.

■■ The seventh issue presented for our review is whether the trial court erred in denying defendant's motion for a mistrial after a number of jurors witnessed an induction ceremony in which the prosecutor was sworn in as a circuit judge. Prior to his induction, the State's Attorney had requested the court's guidance as to how the jury should be advised of the necessary change in prosecutors. In the presence of defense counsel, the court suggested that the new prosecutor should simply state that the State's Attorney had become a judge and could not present the State's closing argument. Defendant voiced no objection to this procedure. Considering this and the lack of any specific allegation of prejudice, we find the court appropriately denied the mistrial motion.

■■ The final issue is whether a new trial is necessary because of numerous statements in the State's final argument. Improper remarks generally

do not constitute reversible error unless they result in substantial prejudice to the accused. (*People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.) We have considered the various statements and the extent prejudice was cured by instructions to disregard them, and do not find a new trial is warranted.

Accordingly, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

ALLOY and HEIPLE, JJ., concur.