(No. 33694.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANDREW MIKKA, Plaintiff in Error.

*Opinion filed November 30, 1955—Rehearing denied Jan. 16, 1956.*

Andrew Mikka, *pro se.*

Latham Castle, Attorney General, of Springfield, and John Gutknecht, State's Attorney, of Chicago, (Irwin D. Bloch, John T. Gallagher, Rudolph L. Janega, William L. Carlin, Francis X. Riley, and Edward Egan, of counsel,) for the People.

Mr. Justice Klingbiel delivered the opinion of the court:

Plaintiff in error, Andrew Mikka, was indicted for the crime of armed robbery in an indictment which also charged that he had been previously convicted of the crime of rape. He was tried by jury in the criminal court of Cook County, found guilty as charged, and was sentenced to the penitentiary for a term of life imprisonment. He has sued out a writ of error from this court to review the judgment of conviction.

On this writ of error plaintiff in error contends, first, that the testimony of the identification witnesses was insufficient to prove beyond a reasonable doubt that he was one of the persons who committed the robbery.

The evidence showed that at about the hour of 2:15 A.M. on February 23, 1952, three men entered a tavern owned by one Clarence Braasch at 9528 South Oakley Avenue, Chicago. At that time there were about 14 or 15 other customers in the place. Braasch was down at the far end of the bar away from the entrance when he saw one of the men enter. This man walked the length of the bar and when Braasch walked over to him to serve him the

man held a handkerchief up to his face and said "This is a stick-up." Braasch started to put up his hands and the man said "Don't bother with that, just keep on serving the customers or make like you are serving the customers." This man had a small-caliber automatic pistol in his hand. Braasch then looked up and noticed that there were two other men in the place who had handkerchiefs up to their faces in the same manner.

Complying with the first man's request, Braasch continued to serve drinks to the customers until the man told him to sit down. The man with the gun and one of the other men then went behind the bar to the cash register and removed approximately $20. One of the men then asked whether there was any other money and Braasch told him that there was and they went into the back room where there was about $80 in a cigar box which they took. One of them then asked Braasch whether he had a gun, and when Braasch replied that he had one in his pocket, one of the men reached in and removed it. It was a .32 caliber 6-shot H & R nickel-plated revolver. When they went back into the main part of the tavern Braasch paid particular attention to the third man who had remained at the entrance and who held a large foreign-looking gun. The men then left, and, as they were leaving, the man at the door entered the telephone booth and tore the phone from the wall and warned Braasch not to try to follow them.

Braasch testified that the robbers did not have the handkerchiefs tied around their faces but simply held them up over their mouths and when they spoke they removed the handkerchiefs and that, therefore, he was able to get a good look at their faces. Later that same night Braasch went to the police station where he picked the three robbers out of a police line-up. One of the men whom Braasch picked out was Mikka, whom Braasch positively identified as the man who stood at the door during the robbery.

The other identifying witness was Julius Braasch, the father of Clarence. He testified in substance that he was employed as a security guard at the Argonne Laboratories; that at about 2:20 on the morning in question he stopped in his son's place of business after work, and as he opened the front door he was approached by a man standing at the door with a gun who told him to walk over to the bar and put his hands on the bar; that he was standing quite close to this man with the gun and kept his eyes on him; that he never took his eyes off of the man and stared in his eyes to get a distinct idea of his features and hair and checked that very thoroughly. This was the only one of the three robbers whom Julius Braasch saw but he was able to get a good look at him. When the robbers left he saw them get into a car which he identified as a dark colored 1941 Ford coupe. After the robbers left, Julius Braasch called the police and later that morning went down to the police station where he viewed the line-up previously referred to. Out of the line-up of eight men, he identified Mikka as being the man at the door with the gun.

Plaintiff in error contends that the line-up out of which he was identified was unfair because there were two police officers in the line-up who were wearing their uniform trousers and their holsters. Plaintiff in error argues that it was readily apparent to the witnesses that these two men were police officers because of their attire and that, therefore, the identification which the two witnesses made at the line-up is not sufficient to establish his identity beyond a reasonable doubt. However, the police officers removed their uniform coats and wore borrowed jackets and placed their holsters to the rear. Also, in addition to the police officers there were three civilians in the line-up, one of whom was known by Julius Braasch but none of whom were known to Clarence. We are of the opinion that the fact that the two police officers were in the line-up does not

render the identification testimony incompetent, but only goes to the weight of the evidence. The weight and credibility of the evidence is a matter peculiarly within the province of the jury and on writ of error this court will not substitute its judgment for that of the jury. *People* v. *Wilson*, 1 Ill. 2d 178.

Plaintiff in error contends that the State should have called some of the customers who were in the tavern at the time of the robbery to support the identification. We cannot agree with this contention. The manner in which the robbery was conducted indicates that the robbers planned not to alert any of the customers to the fact that a robbery was taking place. There is no showing that any of the customers would have been able to identify the robbers. Also, as we have heretofore held, even if other witnesses were available the State's Attorney was not obliged to call them. *People* v. *Kukulski*, 358 Ill. 601.

Clarence Braasch had an opportunity to observe all of the robbers, and Julius Braasch had a particularly good opportunity to observe the man at the door. Each of these witnesses positively identified the plaintiff in error as being one of the robbers and we are of the opinion that the identification testimony was sufficient. One identifying witness of a positive nature is sufficient. *People* v. *Doyle*, 363 Ill. 307; *People* v. *Fisher*, 303 Ill. 594; *People* v. *Viti*, 408 Ill. 206.

Plaintiff in error also contends that the trial court erred in permitting the State to introduce two guns in evidence. In order to pass upon this question it is necessary to set forth the evidence with respect to the circumstances under which the guns were found.

One Alex Miller, a deputy sheriff assigned to highway patrol, testified that in response to a radio call at about 3 :00 A.M. on the morning in question he and his partner proceeded to the vicinity of 159th and Wood streets where

they waited for a 1942 blue Ford coupe to come by. They only waited there a matter of a few minutes when they saw the car approaching. They followed the car for about four blocks and then pulled along side of it and told the driver to pull over to the side. The officer noticed that the rear window of the Ford was broken, apparently having been broken from the inside. There were three occupants in the car, whom Miller identified as being the three defendants, including plaintiff in error. Miller testified that Mikka was driving the car. They were ordered out of the car and Miller and his partner searched the car and found a P.38 automatic pistol on the floor of the front seat in front of the driver's position. A P.38 pistol is a foreign made gun. At the trial, this gun was identified as being very similar to the gun which Mikka had in his hand at the time of the robbery. Mikka contends that the court improperly admitted the gun in evidence because it was not found on his person. There is no merit to this contention. According to the testimony of Miller, the gun was found in the car which Mikka was driving and was, therefore, sufficiently connected with him to warrant its introduction in evidence.

After Miller and his partner brought the defendants into the station two other officers were instructed to go back to the scene where defendants were picked up and make a search for another gun. They made such a search and found a .32 caliber revolver about 12 feet east of where the car had been parked. Three shots had been fired from this gun at the time that it was found. This gun was identified at the trial by Clarence Braasch as being his gun. Since the revolver was part of the proceeds of the robbery and was found near the spot where defendants were apprehended, there was clearly no error in permitting the State to introduce the same in evidence.

It is also urged that the State improperly introduced

evidence of another crime, unrelated to the crime for which plaintiff in error was being tried. This evidence was as follows: One Delmar Genens testified that on the morning in question, some time between 2:30 and 3:00 A.M. he was in the Olympia Gardens tavern, which is several miles distant from Braasch's tavern. When he left the tavern he saw three men get into a 1942 blue Ford coupe. He recognized one of plaintiff in error's codefendants as one of the men. The Ford proceeded down the highway ahead of Genens at a speed of about 60 or 70 miles per hour. While Genens was proceeding down the highway behind them there were three shots fired at him from the Ford. The barmaid at the Olympia tavern testified that all three of the defendants, including plaintiff in error, were present in the tavern on the morning in question and that they left together.

Plaintiff in error contends that the trial court improperly admitted evidence concerning his presence in the Olympia Gardens tavern, and also contends that Genens's testimony that someone fired three shots at him from the car in which plaintiff in error was riding was improperly admitted.

Ordinarily evidence of separate offenses unconnected with the crime for which a defendant is on trial is incompetent. However, evidence of such offenses may be introduced to show consciousness of guilt, such as flight from apprehension. (*People* v. *Doody,* 343 Ill. 194; *People* v. *Kidd,* 410 Ill. 271.) Such evidence is also competent if it tends to identify the accused as the person who committed a particular crime under investigation and to disprove an alibi. (*People* v. *Eckman,* 380 Ill. 413; *People* v. *Mandrell,* 306 Ill. 413.) The fact that the defendants in the speeding blue Ford shot at Genens who happened to be following them indicates consciousness of guilt. Plaintiff in error testified at the trial that he knew nothing about a

1941 or 1942 dark colored Ford coupe and that he had never been in such an automobile on the night of the robbery. He denied Miller's testimony that he was arrested while driving the car and stated that he and his two companions were walking down the street when arrested. Since Julius Braasch testified the robbers used such a car as the get-away car, Genens's testimony that he followed three men, one of whom he recognized as one of plaintiff in errors' codefendants, leaving the Olympia Gardens tavern and saw them enter such a car was competent. The fact that three shots were fired from the rear of the car which Genens saw plaintiff in error enter, coupled with the facts that the rear window of the Ford was broken out from the inside and three shots had been fired from the revolver, serves to connect plaintiff in error with the car and the gun.

Plaintiff in error further contends that the trial court erred in admitting into evidence the testimony of a police sergeant that when plaintiff in error was first brought before him he refused to make a statement. The sergeant went on to testify that after plaintiff in error had been identified in the line-up he made an oral statement to the sergeant in which he denied the robbery. In this statement he first denied knowing the other two defendants and later admitted that he knew them and had served time with them in Joliet. He admitted driving the automobile but stated that he knew nothing about the guns. Plaintiff in error contends that the testimony that he refused to make a statement deprived him of his constitutional protection against self incrimination and destroyed the presumption of innocence against him. Generally, the introduction of such evidence is improper, for one accused of crime has a right to remain silent and his refusal to give a statement has no tendency to prove or disprove the charge against him. (*People* v. *Rothe*, 358 Ill. 52.) However, in this case, plaintiff in error did make a statement after first

refusing to do so. Under these circumstances, testimony that he first refused to give a statement was not prejudicial to him.

Plaintiff in error further contends that the court erroneously permitted the State's Attorney to cross-examine him concerning his acquaintance with the other defendants in the penitentiary. This was a prosecution under the Habitual Criminal Act and evidence of plaintiff in error's prior conviction was admissible since it was stipulated by his counsel as part of the State's case that he had been convicted and sentenced to the Illinois State Penitentiary at Joliet for a term of 15 years.

It is charged that the trial court should not have permitted plaintiff in error's defense counsel to stipulate as to his former conviction upon the theory that there can be no stipulation as to matters of law. The former conviction of plaintiff in error was not such a question, but was merely a question of fact. Plaintiff in error also seeks to derive some benefit from the fact that this court reversed the judgments of conviction of his two codefendants, and remanded the cause with directions to strike the portion of the indictment charging that they had been previously convicted of another crime. These judgments of reversal were occasioned by the fact that the indictments of the codefendants failed to allege imprisonment in the penitentiary. The indictment of plaintiff in error was not subject to this objection and the fact that we reversed the other judgments is of no benefit to plaintiff in error.

Complaint is also made that the trial court erred in giving certain instructions. The record does not disclose at whose request the instructions were given. In this state of the record we will not consider such a contention. *People* v. *Kemp*, 396 Ill. 578.

Plaintiff in error further claims that the trial court refused to give an instruction on the presumption of inno-

cence. An identical instruction was given by the court and therefore the refusal to give this instruction referred to was not error.

It is argued that petitioner's court-appointed counsel were incompetent. We have carefully reviewed the record and are of the opinion that petitioner's counsel were able and conscientious.

In addition to the specific assignments of error discussed above, plaintiff in error contends that the evidence at his trial was insufficient to establish his guilt beyond a reasonable doubt. We have heretofore in this opinion, in passing upon the plaintiff in error's other contentions, discussed the evidence in some detatil. There is no dispute that an armed robbery occurred; the identification testimony was clear and positive; according to the arresting officers plaintiff in error was apprehended in a car of the same type as that used as the get-away car; a gun similar to the type used in the holdup was found in the car and the gun which was stolen from Clarence Braasch was found a few feet from the car. Plaintiff in error's defense was a denial that he had anything to do with the robbery and a statement that he was drinking in some tavern, the name of which he did not remember, at about the time of the robbery. He also told the unlikely story that he just happened to be walking along the highway at 3:00 o'clock in the morning when he was arrested. We believe that the evidence was clear and convincing and left no reasonable doubt as to plaintiff in error's guilt.

We have carefully considered all of the assignments of error raised by plaintiff in error and find that there is no merit to any of them. The judgment of the criminal court of Cook County is, therefore, affirmed.

*Judgment affirmed.*