THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BEN DANIELS *et al.*, Defendants-Appellants.

First District (4th Division) No. 59184

Opinion filed January 28, 1976.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Raymond J. Prosser, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Ben Daniels and Robert Dancy, the defendants, were charged in count I with armed robbery (Ill. Rev. Stat. 1969, ch. 38, § 18—2), and Dancy was also charged with attempt murder (Ill. Rev. Stat. 1969, ch. 38, § 8—4(a)) in count II of the indictment. After a jury trial, the defendants were found guilty. Daniels was sentenced to a term of 20 to 50 years for armed robbery, while Dancy was sentenced to a term of 40 to 80 years for armed robbery and 10 to 20 years for attempt murder, sentences to run consecutively. The defendants appeal, raising the following issues for review: (1) whether Daniels was denied a fair trial when the court refused to grant him a trial separate from Dancy who was also charged with attempt murder of a police officer; (2) whether Daniels was denied a fair trial by admission of the gun taken from Dancy; (3) whether failure of the trial court to limit the gun and other evidence of the attempt murder to Dancy was error and denied Daniels a fair trial; (4) whether Dancy should have been granted a severance of counts and separate trials on the armed robbery and attempt murder charges; (5) whether both defendants were denied their right to confront the witnesses against them when the trial court sustained the State's objection to a question calling for the address of a State witness; and (6) whether the sentences are excessive and not conducive to rehabilitation.

The facts reveal that on October 1, 1971, at approximately 7:30 p.m., Mr. Morgan, the complaining witness, was parking his car in the garage

behind his residence. As he got out to open the garage door, the complainant saw two men, whom he had seen before in the neighborhood, approaching him. When the men reached his car, the complainant testified that Daniels, who had a gun, announced the "stick-up." The witness stated that he had an excellent opportunity to observe the assailants since they faced him during the robbery and an artificial light 30 feet from the occurrence illuminated the area. After searching the complainant and taking a wallet with $23, keys, and a change purse, the defendants turned and fled down the alley. Mr. Morgan let his dog out of the yard but called him back when the defendants fired a shot at him. The witness put his car in the garage and went into his house where he related the incident to his foster daughter and the police. Later that evening he went to the hospital to identify Dancy, but the hospital identification was suppressed. However, at the seventh district police station lineup, the witness identified Daniels, and he identified both defendants during the trial.

Madison Mayfield, a Chicago police officer, testified that he responded to an assist call on a robbery investigation along with his partner, Robert Arrigo, and their supervisor, Sergeant Bicek. After arriving at 6148 Morgan, the officers talked with Mr. Morgan and his foster daughter. Since his daughter stated that she knew the alleged perpetrators, she accompanied the officers on a tour of the neighborhood. When they reached 61st and Halsted, two black males were observed walking on 61st Street, and Miss Daniels stated that these were the men they were seeking. Officer Mayfield stopped the car and Officer Arrigo and Sergeant Bicek got out and approached the men. One man fled by running north on Halsted, while the other man, Daniels, was placed under arrest and brought back to the car by Officer Arrigo. When Sergeant Bicek, who had been attempting to apprehend the fleeing suspect, returned to the car, the officers got back into the car and Mayfield turned around on 61st Street and headed west. At 61st and Peoria, the second man was again observed. Officer Arrigo got out of the car and went through the alley, and Mayfield turned down Peoria and put Sergeant Bicek out in the middle of the block. He proceeded north to 60th Street and then east on 60th Street to the alley. When the officer arrived in the alley, his partner had his gun drawn and Dancy was lying on the ground. Officer Mayfield took Daniels to the station for a showup and returned to the hospital. The officer left the hospital, secured Dancy's clothes, which contained $23.15, from his home, and returned to the seventh district police station where he inventoried the clothing.

Lieutenant Bicek, then Sergeant Bicek, who was assigned to the seventh district tactical team and was riding with Officers Arrigo and

Mayfield as a tactical supervisor, corroborated Officer Mayfield's story. Officer Arrigo's testimony was consistent with that of his partner and Lieutenant Bicek. However, he explained, when he ordered Mr. Dancy to halt in the alley and announced his office, the defendant turned and fired two shots. Officer Arrigo testified that he returned the fire and wounded the defendant.

Joan Daniels, the foster daughter of the victim, testified that she was present when Mr. Morgan had a conversation with some police officers on the evening of the robbery. The witness told the officers that she knew the men described by Mr. Morgan so they asked her to accompany them in the search. Miss Daniels took the police to Ben Daniels' house and when he was not seen, they proceeded to 60th and Halsted. Shortly thereafter, she spotted the suspects and indicated this to police. They stopped the car and arrested Daniels and although Dancy ran, he was later arrested in an alley.

Ben Daniels testified in his own behalf and denied committing the robbery. He further testified that he drank beer from 6:30 p.m. until about 8:30 p.m. when Robert Dancy came in and asked if he was ready to go home. Daniels then finished his beer and walked out of the tavern with Dancy. When the pair reached 61st and Halsted, two men drove up in a car and one man jumped out and fired a shot. Although Dancy ran, Daniels stood there and was handcuffed and placed in the car.

Daniels further testified that there was a drunk girl in the car who accused him of robbing her father. Daniels asked, "Why do you want to tell a lie on me for?" and she replied, "You was the only one I know wore a cast." Then the officer backed the car up to 61st and Green where they saw Dancy. One police officer jumped out and fired a shot as he ran into the alley. When the car arrived in the alley, a policeman was standing over Dancy with a gun in his hand. The witness was then taken to the police station and put in a lineup. Daniels testified that Mr. Morgan initially failed to identify him but seconds later told the police that he made a mistake and Daniels was the man.

The final witness to testify was Della Dancy. She stated that on October 1, 1971, her son was employed by Hendrickson Manufacturing Company in Lyons, Illinois and, to the best of her knowledge, Dancy was paid on that day because he gave her $32 to pay a bill. She further testified that Dancy came home at 5:30 p.m., went to the cleaners, and returned home. Then a friend of Mrs. Dancy's took the defendant to 58th and Michigan to pick up her little girl. He returned at 6:30 or 7 p.m. and left a short time thereafter. Later that evening she received a phone call from the Englewood Hospital and was instructed by a nurse to come quickly because her son had been shot in the back.

When Mrs. Dancy arrived at the hospital, her son was lying in the emergency room. He told her that the police said he had been involved in a robbery. She asked, "Did you?" and her son answered, "No." After talking with her son, she obtained his clothes which contained $22 or $23 and took them home. However, later that evening she turned them over to a police officer.

■■ Daniels contends that the trial court erred when it denied his motion for severance. We disagree with this contention because the general rule is that persons jointly indicted for the commission of a crime may be tried together, and whether a severance should be granted is a matter largely within the sound discretion of the trial court, the primary question being whether the defenses of the several defendants are so antagonistic that a fair trial can be assured only by a severance. (*People v. Bernette* (1970), 45 Ill.2d 227, 241, 258 N.E.2d 793.) After reviewing the facts, we do not think that the defendants' defenses were antagonistic. Daniels testified and denied committing the robbery, while Dancy exercised his fifth amendment privilege against self-incrimination. We fail to see how the State's case against Daniels would have been less persuasive had the two defendants been severed for trial. Therefore, we hold that the trial court properly exercised its discretion since two or more defendants may be charged in the same indictment when it is alleged and proved that they participated in the same act or comprehensive transaction from which the offense arose.

Daniels also complains about the admission of the gun recovered from Dancy. He contends that admission of the gun destroyed his defense of mistaken identity and prejudicially linked him to Dancy in the minds of the jury since no gun was found on his person when he was arrested. The defendant's argument is similar to the one made in *People v. McCasle* (1966), 35 Ill.2d 552, 221 N.E.2d 227. In that case the defendant maintained that a gun and bullets which an officer testified were taken from his codefendant at the time of their arrest should not have been admitted as evidence against him. The court found that there was sufficient testimony to establish that at least one weapon was used in the commission of the offense, there was substantial evidence that defendant participated in the crime, and there was testimony that the weapon admitted was similar to the one used during the robbery. Under these circumstances, the court held that reception of the weapon as evidence against the defendant was proper. *McCasle* relied heavily on *People v. Ashley* (1960), 18 Ill.2d 272, 280, 164 N.E.2d 70, *cert. denied,* 363 U.S. 815, 4 L.Ed.2d 1157, 80 S.Ct. 1255, which held that a weapon may be admitted into evidence where there is proof to connect it with

the defendant and the crime. The court indicated that it is unnecessary to establish that the particular weapon was the one actually used, or that the defendant wielded or possessed it. This court reached a similar result when connecting a weapon to a crime in *People v. Smith* (1972), 5 Ill.App.3d 648, 283 N.E.2d 727.

In the instant case, although it is true that Daniels had no weapon on his person when arrested, the complainant identified Dancy and Daniels as the perpetrators of the robbery and testified that the gun the State admitted into evidence looked like the gun Daniels held to his head during the stickup. Moreover, the State's evidence established that the recovered weapon was fired three times; one shot was fired at Morgan's dog, and two shots were fired at Officer Arrigo. The preceding was corroborated by Officer McGinnis of the Chicago Police Department Criminalistics Division who testified that the gun seized from Dancy contained three spent casings. Finally, the gun was recovered from one of the assailants a short time after the robbery. We think that the proof clearly established a nexus between the defendant, the gun, and the crime. Defendant's argument that the admission of the gun destroyed his defense of mistaken identification and prejudicially linked him to Dancy is one that we find to be devoid of merit. The complainant identified the defendant at a lineup shortly after his arrest and at trial. In addition, the facts reveal that the defendant and Morgan were neighbors.

■■ Since we have held that it was proper for the trial court to admit the weapon as evidence against Daniels, it is unnecessary to consider defendant's third argument that the court failed to limit the gun and other evidence of attempt murder to Dancy.

Dancy argues that there should have been a severance of counts because the armed robbery and attempt murder were separate and distinct offenses committed against different persons at different times and places. In this State, joinder of offenses in a single indictment is permitted if the offenses are part of the same comprehensive transaction. (Ill. Rev. Stat. 1971, ch. 38, § 111—4(a).) However, joinder is not permitted where the charges are unrelated, where the crimes occur several days apart (*People v. Pullum* (1974), 57 Ill.2d 15, 309 N.E.2d 565), or where there is no concerted plan of action or scheme that would link two felonious acts. *People v. Bricker* (1974), 23 Ill.App.3d 394, 397, 319 N.E.2d 255.

In *People v. Williams* (1973), 14 Ill.App.3d 789, 303 N.E.2d 585, this court found two or more acts that were part of "the same comprehensive transaction." The defendant complained about murder and in-

timidation counts that were joined. The evidence indicated that the defendant murdered his wife and intimidated a witness by threatening to kill her if she reported the crime to police. The court held that the two crimes occurred in proximity of time and clearly were part of the same comprehensive transaction.

■■ The case under review is like *Williams* in that the second felonious act, the attempt murder, was closely related in time and occurred about 50 minutes after the robbery. Moreover, the two crimes occurred a few blocks apart and the attempt murder was a criminal effort to avoid apprehension for the previous crime. The defendant argues that a severance should have been granted since different victims were involved. In *Williams,* two counts were joined that involved different parties and we think that it was proper in the case under review since the crimes were part of the same comprehensive transaction.

■■ Next, Dancy complains about being forced to trial with a defendant who elected to testify in his own behalf. He relies on *De Luna v. United States* (5th Cir. 1962), 308 F.2d 140, where the court held that an accused has a constitutionally guaranteed right of silence free from prejudicial comments of the codefendant's attorney. In the instant case, defendant Dancy failed to make a motion for severance and failed to point out any prejudicial comments made by codefendant's counsel. Our examination of the record failed to disclose any comments by codefendant's counsel that demonstrated an attempt on his part to draw the jury's attention to the possible inference of guilt that might flow from Dancy's silence. Therefore, we think that defendant's reliance on *De Luna* is misplaced.

■■ The defendants argue that they were deprived of their sixth amendment right of confrontation when the trial court sustained an objection to a question calling for the address of Joan Daniels. We failed to find a State objection to the question calling for the address of the witness, and the court instructed the prosecution to tender the requested information during a side bar. In light of the preceding, we do not think that the defendants' right of confrontation was violated.

■■ Finally, the defendants contend that their sentences are excessive. Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1971, ch. 110A, § 615 (b)(4)) provides this court with authority to reduce sentences of defendants. (*People v. Robinson* (1974), 20 Ill.App.3d 777, 786, 314 N.E.2d 585.) Therefore, Daniels' sentence of 20 to 50 years for armed robbery is reduced to a term of 10 to 30 years, while Dancy's sentence of 40 to 80 years for armed robbery is reduced to a term of 15 to 45 years and his 10- to 20-year sentence for attempt murder will stand. However, the sentences are to be concurrent rather than consecutive.

For the foregoing reasons, the judgment of the circuit court of Cook County, as modified, is affirmed.

Affirmed as modified.

DIERINGER and BURMAN, JJ., concur.