THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* AARON HYCHE, Defendant-Appellant.

Fifth District    No. 77-15

Opinion filed May 10, 1978.—Supplemental opinion filed on rehearing August 9, 1978.

G. MORAN, J., dissenting.

Michael J. Rosborough and Phillip A. Kramer, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William J. Scott, Attorney General, of Chicago, and Glen Bower, State's Attorney, of Effingham (Donald B. Mackay, Melbourne A. Noel, Jr., and John C. Carroll, Assistant Attorneys General, of counsel), for the People.

Mr. JUSTICE WINELAND delivered the opinion of the court:

The defendant, Aaron Hyche, appeals from his conviction of murder, attempt murder, and kidnapping. Defendant appeals alleging that certain errors committed at trial deprived him of a fair trial.

Factually it appears that on March 19, 1976, at approximately 1:30 p.m. State Trooper Layton Davis stopped an automobile for a speeding violation in Effingham County. The two occupants of the automobile, who were black men, became involved in an altercation with Trooper Davis. Herman Honn, a passing motorist, witnessed the altercation, stopped his Chevrolet Blazer, and went to render aid. Before Mr. Honn could render aid, Trooper Davis was thrice shot which resulted in his death. As Mr. Honn then hurriedly returned to his Blazer, a shot was fired at him. As he sped away on the interstate, a shot was fired through his windshield. Mr. Honn identified defendant at a lineup and identified defendant at trial as the man who shot Trooper Davis. Approximately 45 minutes after the death of Trooper Davis, Ms. Anna Mae Feldhake observed two black men near a motor vehicle, which was in a ditch, on a county road near the city of Effingham. She stopped in order to ask them if they would like a ride to a nearby farmhouse. The two black men forced Ms. Feldhake into the backseat of her automobile and headed east. The Feldhake automobile ran into a ditch near Olney, Illinois, after a high speed chase and after an attempt to avoid a road block. Ms. Feldhake identified defendant at trial as one of the men who abducted her. Defendant was apprehended by a State trooper as he tried to flee. Lilly Taylor, the mother of defendant's accomplice, testified that on the Sunday after the death of Trooper Davis, defendant telephoned her and stated that he had killed a State trooper and that her son was with him. Other evidence presented at trial established that an arrest warrant for defendant had been issued in Cook County after failure of defendant to appear for sentencing on convictions for attempt murder and attempt armed robbery. Trooper Davis had been informed by the State authorities when he received the driver's license information that an arrest warrant for defendant was outstanding. Defendant's driver's license was found on the seat of Trooper Davis' squadrol.

Defendant's initial contention is that the court erred in joining, upon the State's motion, the kidnapping information with the murder and attempt murder information for trial. Defendant concedes that the information alleging that defendant committed the murder of State Trooper Layton Davis and the attempt murder of Herman Honn were properly joined for trial, but contends that the information charging him with the kidnapping of Anna Mae Feldhake was improperly joined as not being of the same comprehensive transaction as the other crimes.

■■ ■ Section 111—4(a) of the Code of Criminal Procedure of 1963 provides that two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies, misdemeanors or both, are based on same act or on two or more acts which are part of the same

comprehensive transaction. (Ill. Rev. Stat. 1975, ch. 38, par. 111—4(a).) Section 114—7 of the Code of Criminal Procedure of 1963 provides that the court may order two or more charges to be tried together if the offenses could have been joined in a single charge. The procedure shall be the same as if the prosecution were under a single charge. (Ill. Rev. Stat. 1975, ch. 38, par. 114—7). Joinder of criminal offenses are controlled by the foregoing sections of the Code of Criminal Procedure and is committed to the sound discretion of the court. (*People v. Perry* (2d Dist. 1975), 27 Ill. App. 3d 565, 327 N.E. 259; *Coleson v. Spomer* (5th Dist. 1975), 31 Ill. App. 3d 563, 334 N.E.2d 344.) However, joinder is not permitted where the charges are unrelated, where the crimes occur several days apart, or where there is no concerted plan of action or scheme that would link two felonious acts. (*People v. Daniels* (1st Dist. 1976), 35 Ill. App. 3d 791, 342 N.E.2d 809.) In this case, the crimes joined occurred within one hour of each other. Although we do not say that the mere passage or nonpassage of a certain amount of time is determinative of whether charges are properly joined, we find that the information was sufficiently related in time to be properly joined. We are also of the opinion that the offenses were part of the same comprehensive transaction and, therefore, properly joined. The crimes occurred a few miles apart in a rural county. A narrow view of the "comprehensive transaction" is that the kidnapping was a criminal effort to avoid apprehension for the previous crime of murder and attempt murder. A larger view of the comprehensive transaction is that all three crimes were a criminal effort to avoid apprehension and return to Cook County to face sentencing on the attempt murder and attempt armed robbery convictions there.

In *People v. Daniels* (1st Dist. 1976), 35 Ill. App. 3d 791, 342 N.E.2d 809, the court was faced with a similar situation. In *Daniels*, Morgan was the victim of an armed robbery at 7:30 p.m. in Chicago, Illinois. Mr. Morgan's daughter knew the armed robbers and accompanied the officers on a tour of the neighborhood. Upon seeing one of the suspects 50 minutes later, Officer Arrigo got out and chased the man down the alley. This man, Darcy, failed to halt when Officer Arrigo announced his office and fired two shots at Officer Arrigo. The charges of armed robbery and attempt murder were joined in the indictment. The trial court denied defendant's motion for severance. The appellate court affirmed the trial court and ruled that because the crimes occurred in close proximity to each other and the attempt murder was a criminal effort to avoid apprehension for the crime, the crimes were part of the same comprehensive transaction, and, thus, properly joined.

Defendant attempts to distinguish the *Daniels* case from the case at bar by arguing that in *Daniels* Officer Arrigo knew of defendant's prior crime while Ms. Feldhake was not aware that the criminal offenses had been

committed. We find this argument unpersuasive. The joinder of the offenses should rest in the sound discretion of the trial court and not be based on the knowledge or mental state of the victims of the crimes that are joined.

Defendant relies on *People v. Pullum* (1974), 57 Ill. 2d 15, 309 N.E.2d 565, *People v. Fleming* (1st Dist. 1970), 121 Ill. App. 2d 97, 257 N.E.2d 271, and *People v. Bricker* (4th Dist., 1974), 23 Ill. App. 3d 394, 319 N.E.2d 255, which are inapposite to the case at bar. In *Pullum*, defendant was indicted and tried on charges of armed robbery and possession of marijuana. The armed robbery occurred on September 4, 1970. Defendant was arrested 16 days later and when searched by arresting officers, the marijuana was found. Defendant's pretrial motion for severance was denied. There was no indication that the marijuana was taken during the armed robbery. In *Fleming*, defendant was indicted and tried on two counts of theft in excess of $150. One count involved the unauthorized control over of an automobile in August 1966. The second count alleged theft by deception in selling the same automobile and receiving cash and clothes in return during the spring of 1967. In *Bricker*, defendant was indicted and tried on two counts of armed robbery. One armed robbery occurred at 12:30 a.m. at a gas station south of Bloomington. The other armed robbery occurred at a hotel within the City of Bloomington at 3:30 a.m. In each case, the trial court denied defendant's motion for severance. In each case, the appellate court reversed the convictions and remanded the case for separate trials while ruling that the cases were not part of the same comprehensive transaction. In each of those cases, the objective to be attained by each crime made the crimes so dissimilar that they could not be considered part of the same comprehensive transaction while in the case at bar all crimes were committed within the objective of avoiding arrest and return to Cook County for sentencing.

No prejudice occurred to the defendant by joinder of the information as evidence of flight can be introduced to show guilty knowledge. (*People v. Mikka* (1955), 7 Ill. 2d 454, 131 N.E.2d 79, *cert. denied* (1955), 350 U.S. 1009, 100 L. Ed. 871, 76 S. Ct. 656.) Defendant argues that the foregoing could be done without introducing evidence of the kidnapping. However, it was proper to introduce evidence of how, when, and where defendant came into possession of the Feldhake automobile. Also Ms. Feldhake heard an incriminating remark as a State police station was passed. That evidence could only be admitted through the testimony of Ms. Feldhake or through stipulation as to her testimony. In *Fleming*, the charging and evidence of two dissimilar crimes of theft could prejudice the defendant by creating the impression in the mind of the jury that one twice charged with theft must be a thief as the charging and evidence of

two dissimilar armed robberies might create in the mind of the jury that defendant is an armed robber as in *Bricker*. In the case at bar, the victim, though injured in the automobile accident, was not injured at the hand of defendant or his accomplice. She was told that she would not be harmed. Therefore, we see nothing in the evidence presented on the kidnapping charge which would create in the mind of the jury that defendant was a murderer except that defendant had guilty knowledge of the other crimes which, as discussed previously, was proper evidence.

Secondly, the defendant contends, relying on *People v. Massarella* (1st Dist. 1977), 53 Ill. App. 3d 774, 368 N.E.2d 507, *appeal allowed* (1978), ___ Ill. 2d ___), that he was improperly prosecuted because the Attorney General improperly and in excess of his authority conducted the prosecution. We find *Massarella* distinguishable from the case at bar. In *Massarella*, the grand jury, at which evidence was presented by Assistant Attorney Generals, returned an indictment against the defendant. The Attorney General, by an assistant, conducted the trial unassisted by the State's Attorney or an assistant. The only time the State's Attorney, through his assistants, at all participated in the prosecution of defendant, was at the arraignment at which the assistant state's attorney stated, "This is the Attorney General's case." The *Massarella* court reversed defendant's convictions and ruled that the Attorney General was not authorized by section 112—6(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 112—6(a)) to appear before the grand jury nor was he authorized by common law or statute (Ill. Rev. Stat. 1975, ch. 14, par. 4) to thereafter take exclusive charge of prosecuting the case. In the case at bar, defendant was prosecuted by information pursuant to section 111—2 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 111—2). The State's Attorney of Effingham County, and only he, signed the information and amended information on which defendant was prosecuted; therefore, there is no violation of a specific statute as occurred in *Massarella*. In this case, the State's Attorney was present at all stages of the prosecution. Although the assistant Attorney General was present at the sentencing hearing, the State's Attorney completely presented the State's case. Every pleading, save one, which was filed by the State, was signed by the State's Attorney. The facts, as cited above, leads us to the conclusion that the State's Attorney of Effingham County was in control of the prosecution of this case and his function was not usurped by the Attorney General.

Thirdly, defendant contends that he was deprived of due process of law because the jurors were picked, in part, from the same panel from which the jurors who sat on Taylor's case were chosen. Prior to defendant's trial, the trial court issued an order directing the circuit clerk to draw a special panel of 100 names from which to select the jury for

defendant's trial. This special panel of 100 along with the persons on the original panel of 100, *who had not served on Taylor's jury or who had not been excused for cause in the Taylor proceedings*, constituted the pool from which defendant's jury was drawn.

■■ Immediately prior to the commencement of voir dire, defendant made a challenge to the array which was overruled. A challenge to the array is directed toward the formal manner of selecting the venire and not to the competency of those so selected to be impartial jurors. (*People v. Cunningham* (1st Dist. 1970), 123 Ill. App. 2d 190, 260 N.E.2d 10). On appeal, defendant relies on *People v. Faulisi* (1966), 34 Ill. 2d 187, 215 N.E.2d 276 in which our supreme court ruled that the trial court erred in denying a motion for continuance where the jury was chosen from the same venire as that which tried and convicted his co-defendant. However, the proper procedure in the case at bar would have been the motion to continue. Defendant chose the method which he thought would insure him a fair trial. Having chosen to proceed with the venire that was impaneled after his challenge to the array was denied coupled with his failure to request a continuance in order to obtain an entirely new venire, defendant cannot now be heard to complain that he was deprived of a fair trial.

In *People v. Faulisi* (1966), 34 Ill. 2d 187, 215 N.E.2d 276, our supreme court found that bias and prejudice were inherent in a situation in which a defendant must select his jury from a venire which contained venire-persons who had been jurors in defendant's accomplice's case. On the other hand, courts of other jurisdictions have required the defendant to show bias. In *State v. Kennedy* (1973), 8 Wash. App. 633, 508 P.2d 1386, prior to defendant's trial, his co-defendant, who did not testify at defendant's trial, pleaded guilty as prospective jurors entered the courtroom. The prospective jurors were excluded from the courtroom until the plea was completed. The court ruled that no prejudice occurred and none could be presumed. In *State v. Geelan* (1963), 80 S. D. 135, 120 N.W.2d 533, a juror, who served on defendant's accomplice's jury, served on defendant's jury. This juror was not challenged for cause nor did defendant exercise a preemptory challenge. Defendant's conviction was affirmed. In *Lumpkin v. State* (Okla. Crim. App. 1971), 482 P.2d 947, defendant's accomplice was tried prior to defendant, and during voir dire of defendant's trial the jury in the accomplice's case reached a verdict. The trial court directed the jurors in the box and the remaining jury panel to retire outside of the courtroom. The conviction was affirmed and the Oklahoma court ruled that the burden was on the defendant to show by clear and convincing evidence the misconduct of a juror had prejudiced defendant's right to a fair trial. In *Miller v. United States* (D.C. Cir. 1965), 347 F.2d 797, defendant's jury was drawn from the same venire from

which his accomplice's jury was drawn five days earlier. The jurors, who sat in the accomplice's case, were among the venire from which defendant's panel was chosen. There was no suggestion that any members of defendant's panel had actually discussed or gained any impression concerning this case from jurors who had set in the co-defendant's trial. There was no motion that the trial court inquire of the jurors whether any of those drawn in the Miller trial had perceived from any source a connection with the accomplice's case. The court affirmed the conviction and ruled that no prejudice was demonstrated. In the case before us, the defendant complains that some members of the co-defendant's venire were members of the jury that convicted him; however, there is no showing that these few members of the co-defendant's venire were present at that co-defendant's trial, nor is there any showing that they had any more knowledge of the defendant's case than other residents of the county, since they were not chosen as jurors in the co-defendant's case. Also defense counsel stated to the court that he had advised the defendant that a motion for a change of place of trial should be made pursuant to section 114—6 of the Illinois Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 114—6). Defendant, however, wanted to be tried in Cook County. If he could not be tried in Cook County, he did not want to make a motion for a change of place of trial. The State stated that it would not object if such a motion were made. The court stated that he thought a change of place of trial to Kankakee County might be granted if a motion were made, but he would not be placed in a position where defendant selects the place of his trial. No such motion was made. Therefore, in light of the foregoing recent cases, our supreme court might rule today, if faced with the issue, that prejudice must be established, rather than presume prejudice, when a jury is picked from the same venire from which an accomplice's jury has been chosen.

■■ Defendant's fourth contention alleges that error was committed when the defendant waived trial before the venire while handcuffed. The record indicates that the trial court was aware that the defendant intended to waive his right to be present at trial. (See Ill. Rev. Stat. 1975, ch. 38, par. 115—3(a).) Defense counsel asked the court to allow the defendant to make his remarks in chambers. The court denied the motion, and defendant waived his right to be present at trial in open court. Defendant does not state how he was prejudiced by the foregoing nor do we find any prejudice. Therefore, we find no error was committed in this procedure.

■■ Defendant's contention that his appearance before the venire in handcuffs was prejudicial is more difficult to resolve. Nothing in the record indicates that there was any reason to believe that if defendant had not been handcuffed, he might have tried to escape, posed a threat to

people in the courtroom, or was a threat to the orderly administration of justice in courtroom. (*People v. Boose* (1977), 66 Ill. 2d 261, 362 N.E.2d 303). Therefore we find that the proper procedure would have been to unhandcuff defendant before his appearance before the venire, allow him to waive his presence at trial, rehandcuff defendant out of the presence of the venire, and return him to the county jail. Although error occurred, we find that the incident was brief and not aggravated. The fact that jurors may briefly see a defendant in handcuffs is not so inherently prejudicial as to require a mistrial. (*United States v. Chrzanowski* (3d Cir. 1974), 502 F.2d 573. See also *People v. Dismuke* (2d Dist. 1972), 3 Ill. App. 3d 553, 278 N.E.2d 152.) Only two prospective jurors commented on his presence in court while in handcuffs. One was excused for cause after she stated that she could not remain impartial when defendant did not want to be at his own trial on serious charges. The other juror was not challenged by defendant either peremptorily or for cause. A review of her voir dire examination indicates that she was a fair and impartial juror. We further note that defense counsel did not object at the time the defendant appeared in court nor did he request a mistrial.

Defendant lastly contends that the court abused its discretion by not allowing defendant's challenge for cause of juror Hunt and in allowing her to remain on the jury until deliberation began. Prior to the presentation of evidence, it was brought to the court's attention that Mrs. Hunt's husband was a nephew of the deceased. When questioned, Mrs. Hunt stated that she had only met deceased approximately six times. She also stated that she was receiving a great deal of pressure from her husband and his family to not serve on the jury, but this pressure would not influence her ability to judge the defendant fairly. Defendant's challenge to Mrs. Hunt for cause was denied. After the evidence was presented but before deliberation began, Mrs. Hunt was called in chambers where the State's Attorney and defense attorney stated that members of deceased's family had admitted that they had spoken to Mrs. Hunt after she had been sworn as a juror although she had told them she could not discuss the case. She stated that she had not discussed the matter with the other jurors; however, two jurors lived nearby and could probably guess what was happening. The State concurred in defense counsel's challenge for cause and Mrs. Hunt was removed from the jury panel and replaced with an alternate juror. The court gave the jury no reason for the removal of Mrs. Hunt, nor was an explanation requested by the parties.

■■ Defendant contends that failure to grant his initial challenge to juror Hunt was prejudicial, because other jurors might have concluded that Mrs. Hunt had been threatened by the defendant or pressured to withdraw by him for her safety. We find this argument highly speculative.

It would be just as reasonable to conclude that Mrs. Hunt was pressured by deceased's family. If a juror meets the statutory qualifications, the determination of whether a challenge for cause should be allowed rests within the sound discretion of the trial court and his ruling will not be disturbed unless he has clearly abused his discretion. (*People v. Harris* (1967), 38 Ill. 2d 552, 232 N.E.2d 721.) At all times, Mrs. Hunt said that she could be fair and impartial. After the first challenge for cause, the trial court said he had been impressed by Mrs. Hunt's intelligence and honesty and felt that she would make every effort not to be prejudiced. It was only after the repeated improper conduct of deceased's family that she was excused for cause. Mrs. Hunt stated that she did not discuss the matter with the other members of the jury. Under the foregoing circumstances, we find no abuse of discretion.

For the foregoing reasons, the judgment of the Circuit Court of Effingham County is affirmed.

Affirmed.

JONES, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

In my opinion the errors committed during this trial compel a reversal and remandment for a new trial in spite of the overwhelming evidence of defendant's guilt. There has never been a dispute in this country that a person's right to due process is not measured by the degree of his guilt.

In this case five members of the jury that convicted this defendant were members of the jury panel which had convicted a co-defendant one week earlier. Under the rationale of *People v. Faulisi*, 34 Ill. 2d 187, 215 N.E.2d 276, this was reversible error.

Reversible error was also committed when the trial court overruled defendant's challenge for cause to an obviously unqualified juror.

In selecting the jury, defense counsel exercised all 20 of his preemptory challenges. Leslie Hunt was one of those people selected as a juror. On Friday, August 26, 1976, voir dire was completed and the jury was sworn and told not to discuss the cause with anyone. The jurors were allowed to return to their homes for the weekend. When the presentation of evidence was about to begin on Monday, August 30, 1976, it was brought to the trial court's attention that when Leslie Hunt had been questioned while a member of co-defendant Taylor's jury panel, she had volunteered the fact that her husband was a nephew of the decedent, Layton T. Davis. When further questioned by defense counsel, out of the presence of the other members of the jury, Mrs. Hunt indicated that her contact with the decedent had been distant. She had only talked with him five or six times

at family gatherings. She explained that her husband had known the decedent all his life and had played with the decedent's son frequently while growing up. She also indicated she had been receiving a great deal of pressure from her husband and inlaws over the weekend to not serve on the jury. Her family was so upset that they had contacted the State's Attorney and explained their feelings. They had told her she should lie to be removed from the jury. In spite of this, Mrs. Hunt felt it would not influence her ability to judge the defendant fairly. While making this statement she appeared to be on the verge of tears. Before counsel's arguments, Mrs. Hunt was allowed to return to the other jurors. She was not advised that she should not discuss this incident with the other jurors. Defense counsel then challenged her presence on the jury for cause, arguing that because of undue family influence it would be impossible for her to be fair. The challenge was denied and the trial court explained he was impressed with her honesty and intelligence and felt that, if anything, she would "lean over backward" not to be prejudiced in this case.

During the two days evidence was presented, the jury was sequestered. Following the instruction conference, Mrs. Hunt was again separately called before the trial court. The prosecution at this point explained that because members of her family had admitted to defense counsel and the prosecutor that they had spoken to Mrs. Hunt about the cause after she had been sworn and she had told them she was not permitted to discuss the matter, he would concur with defense counsel's motion to remove Mrs. Hunt from the jury and substitute an alternate. In excusing Mrs. Hunt the trial court stated that she had been sequestered from the other jurors during the evening and had been singled out for different treatment all the way through the trial. Before leaving the room Mrs. Hunt stated that although she had not explained this incident to the other jurors, she felt that the other jurors would be wondering where she went, particularly since two of the jurors lived in the same area as she. Under these circumstances, defendant was denied a fair trial by an impartial jury.

## SUPPLEMENTAL OPINION ON REHEARING

Mr. JUSTICE WINELAND delivered the opinion of the court:

Upon defendant's petition we granted a rehearing and directed the People to file an answer. This cause is heard on the petition of the defendant and the answer of the State. Defendant' petition is directed solely to the issue of prejudice to the defendant allegedly arising from the fact that five members of the jury that tried him had been members of the panel from which the trial jury of codefendant Taylor had been selected. Defendant reasserts the applicability and control of *People v. Faulisi* (1966), 34 Ill. 2d 187, 215 N.E.2d 276.

In our original opinion we stated that defendant had failed to request a continuance for the purpose of obtaining a new venire in order to avoid any prejudice that might result from the use of prospective jurors in both trials. Defendant's petition for rehearing has pointed out, and we acknowledge, that defendant did file a motion for continuance purporting to raise the issue. However, as we hereinafter point out, we doubt whether the issue was effectively raised at trial and effectively preserved in defendant's motion for new trial.

Upon rehearing, then, we will more thoroughly discuss the question of the applicability of the *Faulisi* case to the facts that arose in the trial of this case. In our original opinion our commentary upon the Faulisi case was limited to: "In *People v. Faulisi* [citation] our supreme court found that bias and prejudice [were] inherent in a situation in which a defendant must select his jury from a venire which contained venire-persons who had been jurors in defendant's accomplices' case." In view of our alleged misapprehension regarding defendant's motion for continuance we feel that further analysis of *Faulisi* is required.

In *Faulisi* the *entire* panel of jurors from which the trial jury was to be selected was the same panel from which jurors had been selected in the trial of two co-defendants which had terminated the day before in a mistrial. In that case, none of the panel had actually served on the trial jury of the co-defendants. When the court asked whether any of the prospective jurors had any knowledge of the case, one juror stated she had been called for service in the earlier trial and stated there that she had formed an opinion which would prevent her from being impartial. The juror was excused. Another stated that he had discussed the prior case in a tavern and he was excused. A third juror stated that because of some things that had been said in the prior trial she felt she could not be fair and impartial. A fourth juror stated that she had been in the courtroom when the other case was being tried and heard some comments passed which prevented her from being impartial.

The *Faulisi* court found the case factually similar to *People v. Kirkpatrick*, (1953), 413 Ill. 595, where the defendant was also tried before a jury drawn from the same panel from which jurors had been selected for the trial and conviction of a co-defendant. The *Kirkpatrick* and *Faulisi* courts stated:

> "Every member of the panel was examined and heard the statements of the State's Attorney as to what the *Bennett* case was about. During that trial the jury selected was not confined to a particular room or place but went home at night, and after the conclusion of that trial mingled with other members of this panel in trying cases during the same term of court. Those jurors who were excused from the *Bennett* case sat down in the courtroom for a

short while and listened to the *Bennett* case before departing. One or two stayed to hear the trial of the *Bennett* case. We do not know which of these jurors heard all of the testimony there offered. * * * One or more of this panel sat in the courtroom to hear the *Bennett trial,* and for all we know may have served on the jury here. Seven members of this panel served on the Bennett jury, and, even though they were excused here, they nevertheless in the meantime associated with the remaining members of the panel. Without doubt each and every member of this panel discussed the Bennett trial with each other, and it is to be expected that some opinion would naturally be formed concerning the guilt of this defendant due to his examination in that trial and the subsequent conviction of Bennett." (*People v. Kirkpatrick* (1953), 413 Ill. 595, 599-600.)

"Although this is not a case where the same jurors served in the separate trial of two defendants charged with the same crime, still, resolving all presumptions in favor of this defendant, it is difficult to see how a fair and impartial jury could be selected from the panel presented. (Citation.) Certainly, this panel conversed with one another, discussed the various cases and was entirely aware of the proceedings and verdict in the *Bennett case.* A trial of a defendant under circumstances where he must either select his jury from a panel which has in various ways been exposed to prejudice, bias and partiality (through the prior trial and conviction of another defendant jointly accused of the same crime and in which this defendant was called as a witness and forced to claim his constitutional privileges,) or exhaust all of his challenges and accept thereafter such bystanders as are summoned by the sheriff to fill the panel, cannot be consonant with due process. Such a choice can hardly be said to insure a defendant the fair, impartial jury guaranteed by our constitution." (*People v. Kirkpatrick* (1953), 413 Ill. 595, 600-01; *People v. Faulisi* (1966), 34 Ill. 2d 187, 193.)

"Bias and prejudice are inherent in a situation such as this and in our opinion the questioning by the court was insufficient to guarantee to the defendant his right to trial before an impartial jury." *People v. Faulisi* (1966), 34 Ill. 2d 187, 194.

The facts attendant upon the *Faulisi* and *Kirkpatrick* cases bespoke the result in those two cases. If *Faulisi* and *Kirkpatrick* are to be controlling here it must follow because of a similarity of the facts. We find that the controlling facts differ substantially. In *Faulisi* and *Kirkpatrick* the panels for selecting the jury were the same in the trial of the defendant and the co-defendant. In this case there were 29 called of approximately 140 on

defendant's jury panel who had been on the panel for the Taylor trial. *None of those challenged for cause by defendant were challenged because they had been on the panel of the Taylor trial.* The record does not show any of the panel at defendant's trial had been present at the trial of Taylor. None of the panel of defendant's trial had sat as jurors in the Taylor trial. The record affirmatively shows that there was no discussion of the Taylor trial among the panel for defendant's trial, by the panel members from the Taylor trial or otherwise. Thus no "contamination" was possible. No member of the panel for defendant's trial expressed any opinion, bias, prejudice or preconceived notion as a result of experience in or contact with the Taylor trial.

In the case under consideration five members of the jury that tried defendant had been on the panel from which the Taylor trial jury had been selected. All the jurors who sat in the trial of Taylor and all who had been excused for cause from that trial were excluded from the panel of prospective jurors for defendant's trial. The record further demonstrates that the court was careful to see that defendant was tried by a jury that was fair and impartial, free from any bias or prejudice that could arise from any source. Two courtrooms were utilized in the jury selection process. The panel members were kept in one courtroom and taken from there in panels of four to a second courtroom for questioning by the court and counsel regarding their fitness to serve as jurors in the case. After the panel of four was examined by the court upon general and preliminary matters, three of the four would then be excluded while the attorneys examined prospective jurors one at a time. The question of prejudice was thoroughly explored as to all jurors, including the five in question, and they were found to be without prejudice. We think it significant that after all five of the jurors who sat in trial of defendant after being on the Taylor panel had been accepted by defendant, defendant had unused peremptory challenges.

The *Faulisi* case stated: "Bias and prejudice are inherent in a situation such as this * * *." (34 Ill. 2d 187, 194.) We need not concern ourselves here with any presumption that would arise from the "situation" presented. We find that the record affirmatively shows a total absence of bias or prejudice and any presumption to the contrary is unwarranted. The defendant does not in fact point to a single instance of a biased or prejudiced juror, relying instead upon the "situation."

Turning again to the motion to continue the case it appears that the essence of the motion was to continue the case on the basis of alleged prejudicial pretrial publicity which might have resulted from accomplice Taylor's trial. Although the motion does mention that the defendant would be prejudiced by selecting the defendant's jury from the same

panel from which Taylor's jury was selected, this contention does not mention *Faulisi* and gives the reader the impression from the entire context of the motion that defendant was arguing that the jury panel would be more likely to read the accounts of Taylor's trial than other citizens in the county. During the hearing on defendant's motion, the *Faulisi* case was not mentioned nor was the section of the motion on the jury panel mentioned. The thrust of defendant's argument was that he could not receive a fair trial due to the publicity which the recently completed trial of Taylor received. Defense counsel stated that he strenuously advised defendant that a motion for change of venue should be filed. The State, conceding that a fair trial would be difficult but not impossible to obtain in Effingham County, stated that if a motion for change of venue were filed, the State would not object. The court stated that if the motion were filed, he would be inclined to grant the motion and probably conduct the trial in Kankakee County. Defendant personally stated in open court that he desired to be tried in the county of Cook; if not in Cook County, then in Effingham County. The court stated that it refused to be placed in a position in which a defendant dictated the place of trial and refused a change of venue on defendant's condition. On the same date the hearing was held, the court entered the order for the impanelling of the additional jurors.

On the day defendant's trial commenced, defense counsel made the challenge to the array and argued:

> "I believe that due to the nature of the situation and these people were excused in a trial last week, I believe that they probably spent their time reading about that trial, and that trial was spelled out in detail in the local newspapers; and consequently, I believe that the entire array has been contaminated to such extent that my client could not receive a fair trial with that array, so we will make a challenge of the entire array."

Again *Faulisi* was never mentioned in argument. Counsel's argument reenforces our belief that the motion to continue was based solely on pretrial publicity considerations. Therefore, we conclude that defendant was not concerned with the bias considerations of *Faulisi* but only with the possibility that members of the jury panel would be more prone to read and hear news accounts of accomplice Taylor's trial than other citizens of the county. On page 9 of our opinion, it should have been more precisely stated "[t]he proper procedure in this case at bar would have been a motion to continue" based on *People v. Faulisi* (1966), 34 Ill. 2d 187, 215 N.E.2d 276. We adhere to our original opinion that defendant chose the method he thought best to insure him a fair trial: he failed to allow his attorney to file a motion for change of venue; he filed a motion to

continue on the basis of pretrial publicity; and he failed to file a motion or make any challenge to the jury panel on the basis of *Faulisi*.

In dicta in our opinion, we noted that the trend of other jurisdictions is that the defendant must show bias and prejudice in a situation in which his jury is chosen from the same jury panel from which a co-defendant's jury had been chosen or in a situation in which a potential juror had some contact with proceedings against an accomplice rather than presume bias and prejudice as is the law in Illinois. (*People v. Faulisi* (1966), 34 Ill. 2d 187, 215 N.E.2d 276; *People v. Kirkpatrick* (1953), 413 Ill. 595, 110 N.E.2d 519.) As defendant contends, this court is bound by *Faulisi*; however, we are only so bound if *Faulisi* is controlling. We would not hesitate to reverse and remand this cause for a new trial if the issue raised in *Faulisi* was ever presented to the trial court and denied by him. In post-trial motions, defendant alleged error due to the denial of the motion to continue, without stating any specific reasons why the denial was error. In argument on post-trial motions, this section of the post-trial motion was not argued. We conclude that a motion or any other means to continue based on *Faulisi* was never brought to the trial court's attention and was never an issue in the trial of this case.

For the reasons set forth we find that the *Faulisi* and *Kirkpatrick* cases are inapplicable. We conclude by deciding to adhere to our original opinion, as now modified herein upon rehearing.

Affirmed.

JONES, J., concurring.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

The majority properly granted defendant's petition for rehearing in this cause and spent several pages attempting to justify an unexplainable opinion. I stand by my dissent in this cause.