THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RENA WELLS, Defendant-Appellant.

First District (3rd Division)   No. 1—87—2401

Opinion filed June 21, 1989.

*Justice Egan participated in the decision of this case before his assignment to the sixth division.

Michael J. Pelletier and Linda Eigner, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Carol L. Gaines, and Edward Pacer, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Rena Wells, was charged by information with two counts of delivery of a controlled substance, to wit, cocaine. After a jury trial in the circuit court of Cook County, in which she was tried jointly with Paul Harris, defendant was convicted of both counts and sentenced to two concurrent terms of six years' imprisonment. She appeals.

On July 18, 1986, defendant was in the company of Harvey Harris (Harris), and a second unidentified male, when Andre Davis, a police officer working undercover for the Northeast Metropolitan Enforcement Group (MEG), purchased two ounces of cocaine from Harris in a parking lot of the Kickapoo Woods Forest Preserve.

On August 1, 1986, defendant was again in the company of Harris and his nephew, Paul Harris, when Davis purchased eight ounces of cocaine from Harris at the same location. However, on this date, Harris, Paul Harris and defendant were arrested after the transaction.

Prior to the start of defendant's and Paul Harris' trial, the State moved to consolidate the charges against defendant. The trial court granted the motion on the grounds that defendant would have to "run the gamut twice" if the two charges against her were tried separately. In view of its earlier ruling that the State would be allowed to introduce evidence of the July 18 transaction in a trial of the charge

stemming from the August 1 transaction, the trial court also reasoned that defendant would not be prejudiced by a consolidation of the charges against her.

The State's main witness, Agent Davis, testified to the following. Having previously arranged with Harris to meet him there, Agent Davis and a team of officers from MEG drove to the Kickapoo Woods Forest Preserve on the morning of July 18, 1986, arriving there at approximately 10 o'clock. Shortly thereafter, a car driven by an unidentified male and containing Harris in the rear passenger seat and defendant in the front passenger seat pulled into the parking lot and parked five feet away from Davis' car. After they pulled up, Agent Davis exited his car and walked to the passenger side of the other vehicle at Harris' request. Defendant's window was open at this time. Harris then displayed to Davis two clear plastic bags containing a white powder which had been wrapped in newspaper. Defendant, who was less than two feet away, was observing Harris and Davis. After displaying the bags to Davis, Harris stated that each bag contained an ounce of cocaine.

Davis then knelt down at the rear of the vehicle to test the contents of one of the bags. While he did so, defendant was turned, facing the rear, in Davis' direction. After testing the powder, Davis gave Harris $3,600 for the two ounces, or $1,800 per ounce, the price he and Harris had previously agreed upon. Harris handed the money to defendant and asked her to count it. While defendant was counting the money, Davis tested the contents of the second bag. When Davis finished testing the powder, defendant handed the money back to Harris and stated that "it was all there." Thereafter, Harris told Davis that if he was satisfied with the cocaine, he and his supplier could sell him five or eight ounces more. Davis told Harris that he would contact him later that night to let him know. At this time, defendant was still sitting in the front passenger seat, about two feet away from Davis and Harris.

Davis called Harris, at about 3 p.m. that same day, and informed him that he would be willing to buy eight more ounces of cocaine in about two weeks. Harris then suggested "it be the same place and the same time." On July 30, 1986, Davis called Harris after Harris paged him. Harris told Davis that he had the eight ounces of cocaine, that he wanted $14,000 for it, and suggested that they again meet at the Kickapoo Woods on August 1, 1986, at 10 o'clock.

On August 1 at approximately 10 a.m., Davis and his team of MEG agents again went to the Kickapoo Woods parking lot. Five minutes later, a car driven by Harris and containing Paul Harris in the

rear passenger seat and defendant in the front passenger seat arrived and parked five feet away from Davis' car, facing the same direction. Harris exited his car, raised the front hood and walked over to Davis' car. Davis and Harris met near the front of Davis' car, less than five feet away from defendant and Paul Harris. Harris asked Davis if he had the money, Davis said "yes" and asked Harris if he had the cocaine. Harris responded "yes" and instructed Davis to walk to the rear passenger door of his vehicle. When Davis reached it, Harris told Paul Harris to give him "the bag." At that time, Davis was standing right in front of defendant's door. Codefendant handed Davis the bag and Davis asked if it was all there. Harris replied that it was and Davis told him he had to test it. Davis returned to his car and, while sitting in the driver's seat, tested the white powder he found inside the bag. After testing the powder, Davis got out of his car and stood between the two cars with Harris and Paul Harris. Harris asked Davis for the money and Davis gave it to him. Harris then gave the money to defendant and asked her to count it. Davis then stood by defendant's door and told her there was $7,000 and that he had another package of money. As defendant counted the money, Davis gave the other officers the arrest signal.

As the officers converged on the scene, defendant threw the money out of the car through the open driver's door. When Davis identified himself as a police officer, Paul Harris ran around the rear of the car to the driver's side and attempted to retrieve a revolver from the rear passenger seat but was arrested before he could do so.

Harvey Harris was the only witness for the defense. He testified that on July 18, he had gone to defendant's home and asked her to go with him. However, Harris did not tell her where they were going or otherwise discuss their destination with defendant. Specifically, Harris did not tell defendant or the unidentified male with him that he was going to deliver drugs to someone. On that date, the drugs were covered with newspaper the entire time the three were in the car. Harris admitted asking defendant to count the money Davis had given him on July 18. However, while she told Harris how much money "was there," she did not tell him that "it was all there." After leaving the forest preserve on July 18, Harris did not discuss the sale of the cocaine with defendant nor did she ask him why she was counting the money for him.

Harris further testified that on August 1, he left his house with Paul Harris but did not tell him where they were going. They went to defendant's home and Harris again asked her to go for a ride with him. When defendant told Harris that she had not yet fed her chil-

dren, he said that they would be gone 15 to 20 minutes and would buy some food on the way back. Upon their arrival at the forest preserve, Harris parked his car next to Davis' car. The cars were "close together." Harris opened the hood of his car because there was steam coming from the engine. Lastly, Harris denied discussing, at any time, with defendant his drug dealing in general or discussing with her, on either July 18 or August 1, that he was going to sell drugs on those dates. He flatly denied that defendant had any such knowledge.

OPINION

On appeal, defendant contends the charges against her should not have been consolidated because they were not part of "the same comprehensive transaction" as that term is used in section 111—4(a) of the Code of Criminal Procedure of 1963, which establishes the requirements for joinder of offenses and defendants. (Ill. Rev. Stat. 1963, ch. 38, par. 111—4.) She reasons that: the July 18 and August 1 offenses "involved the sale of separate, discrete quantities of cocaine for a settled amount of cash"; the July 18 sale was completed when Harris received the $3,600 from Davis; the sales were two weeks apart; and nothing in the record suggests that the transactions were contingent upon one another or were part of an "overall plan *** to furnish an uninterrupted supply of drugs" to Davis (*People v. Olson* (1978), 59 Ill. App. 3d 643, 649, 375 N.E.2d 533). Finally, defendant argues that the consolidation severely prejudiced her because a jury trying the July 18 charge would not have heard evidence of the August 1 transaction.

■■ ■ We disagree with plaintiff that the July 18 and August 1 transactions were not part of the same comprehensive transaction. While the acts giving rise to the charges against defendant were performed two weeks apart, the mere passage or nonpassage of a certain amount of time is not determinative of whether charges are properly joined. (*People v. Kinion* (1982), 105 Ill. App. 3d 1069, 1073, 435 N.E.2d 533, *cert. denied* (1983), 460 U.S. 1014, 75 L. Ed. 2d 484, 103 S. Ct. 1256; *People v. Hyche* (1978), 63 Ill. App. 3d 575, 578, 380 N.E.2d 373.) Moreover, while the two transactions may have been completed on their respective dates, we disagree with defendant that they were not contingent upon one another and that they were not part of an overall plan to furnish an uninterrupted supply of drugs to Davis.

Agent Davis testified that, on July 18, Harris offered to sell him additional quantities of cocaine if he was satisfied with the cocaine purchased on that date. This evidence revealed that, contrary to

defendant's assertion, any future sales of cocaine from Harris to Davis were contingent, as far as Harris was concerned, on the quality of the cocaine supplied on July 18. This evidence also revealed an overall plan to furnish a continuing supply of cocaine to Davis, when coupled with Davis' testimony that Harris suggested later on the 18th that the next sale take place at the same place and time as the July 18 sale, that Harris paged Davis on July 30 to tell him he had the additional cocaine and again suggested they meet at the same place and time as on July 18. *Cf. People v. Olson* (1978), 59 Ill. App. 3d 643, 375 N.E.2d 533 (refusal to join two charges of delivery of cocaine on two separate dates with a charge of selling marijuana on a third date was not an abuse of discretion where, although all deliveries were made to same police officer, each delivery was made on a completely separate occasion, was independent of others and was not part of an overall plan to furnish an uninterrupted supply of drugs to officer).

■ As defendant notes, the trial court never determined whether the two transactions were part of the same comprehensive transaction. The trial court merely determined that she would not be prejudiced by consolidation of the charges since it had ruled that the State could use evidence of the July 18 transaction to prove her guilt with respect to the August 1 transaction. Notwithstanding the trial court's failure to address section 111–4, we find no prejudice to defendant in view of our determination, from the record, that the two transactions were part of the same comprehensive transaction.

We also disagree with defendant that the consolidation of the charges against her was error merely because it created the possibility that the jury might infer that she had a propensity to commit the July 18 offense from the evidence of the August 1 transaction. In this regard, we also disagree with defendant that evidence of the August 1 transaction would have been inadmissible in a separate trial on the July 18 offense, because it was irrelevant to defendant's knowledge and intent on the earlier date.

■ In *People v. McKibbins* (1983), 96 Ill. 2d 176, 185, 449 N.E.2d 821, *cert. denied* (1983), 464 U.S. 844, 78 L. Ed. 2d 136, 104 S. Ct. 145, the court noted that other crimes evidence is admissible where two offenses are so similar "that evidence of one offense tends to prove the defendant guilty of the offense charged." The court also noted that general similarities between a charged offense and another offense in which the defendant was involved, while insufficient to allow use of the latter as proof of the commission of the former, were sufficient to allow use of the latter to establish the necessary criminal intent of the defendant in the offense charged. Accordingly, the court

held that, where the defendant professed a nonparticipatory involvement in a robbery-murder, evidence of his involvement in a similar robbery just two days later with the same companions as he had on the day of charged offense could be used to establish his participation therein with the necessary criminal intent.

Defendant distinguishes *McKibbins* on the ground that, while the active participation of the *McKibbins* defendant in the later robbery evinced an unambiguous criminal intent on that occasion, defendant's actions on August 1 were no more revealing than her actions on July 18. We find defendant's attempt to distinguish *McKibbins* unavailing. In focusing upon the differences in the *McKibbins* defendant's participation in the robbery-murder, of which he was convicted, and in the later robbery, defendant ignores that is the similarity of offenses, not their differences, which allows use of one to prove guilt of the other. This is because the similarity "increases the relevance of the evidence and ensures that it is not being used solely to establish the defendant's criminal propensities." *People v. Bartall* (1983), 98 Ill. 2d 294, 310, 456 N.E.2d 59.

*Bartall* and *McKibbins* thus conclusively reveal that it is the similarity of offenses, not their differences, which makes evidence of one admissible to prove another. Moreover, with respect to the relevancy of defendant's August 1 offense to the July 18 offense, while the earlier offense, "standing alone, might have some ambiguity about it, the two incidents, taken together, increase the certainty that the defendant" acted deliberately in committing the July 18 offense. (*Bartall*, 98 Ill. 2d at 311-12.) *McKibbins* and *Bartall* also establish that evidence of the August 1 transaction was admissible, in a prosecution of the offense stemming from the July 18 transaction, to establish defendant's knowledge and criminal intent with regard to that transaction. Being competent for that purpose, it was not inadmissible merely because it also might tend to show defendant's propensity to commit crime. Therefore, the rule that joinder of charges constitutes error where a defendant is prejudiced thereby (*People v. Edwards* (1976), 63 Ill. 2d 134, 345 N.E.2d 496) did not prohibit consolidation of the charges against defendant.

Defendant also contends that repeated instances of improper closing argument by the prosecutors denied her a fair trial. Defendant first asserts that the assistant State's Attorneys misquoted Harris five times as having admitted that defendant did state that it was "all there" after she counted the money for Harris at the July 18 transaction.

Harris was questioned and testified as follows regarding what

defendant said to him after counting the money at the July 18 transaction:

> "Q. And she told you how much was there, didn't she?
> A. Yes, sir, she did.
> Q. She did say that, didn't she?
> A. Yes, sir, she told me how much was there.
> Q. And how much—did she say it was all there?
> A. No, she did not say [it] that way."

In closing and rebuttal argument, the prosecutors stated:

> "And you heard how she counted the money and handed it back to [Harris] *** and say something to that effect 'it's all there.'
>
> And you didn't hear that only from Andre Davis you also heard it from [Harris] who also testified in this case.
>
> * * *
>
> [Harris] gave her the $3600 to count on *** July 18th and she thumbed through it *** and handed it to [Harris] and said, 'It's all there,' or words to that effect according to what Harvey says.
>
> * * *
>
> Unfortunate Rena Wells who says on July 18, 1986, after counting $3600, 'It's all there.' How does she know that it's all there unless she knows what's going on? What's going on in the drug transaction. Why would she say that? And make no mistake, ladies and gentlemen, that evidence is uncontradicted. You heard it from Agent Davis and you heard it *** when [Harris] finally admitted yeah, she said something like that.
>
> * * *
>
> Remember how [defendant's attorney] *** was asking Agent Davis about [defendant] saying it's all there? ***
>
> *** Remember when [Harris] *** finally admitted *** yes, she did say that?
>
> * * *
>
> [Defendant's attorney] says again that Agent Davis was lying about the 'it's all here statement[]' that [defendant] makes after counting the money.
>
> And that's an important piece of evidence. But what he failed to tell you, what he failed to explain away is that even [Harris] admitted *** that that was true."

The State asserts that Harris' response that defendant "did not say [it] that way" when asked whether she had said it was "all there" was merely a conditional denial and could properly be interpreted to

mean that defendant did make a statement similar to "it's all there." Therefore, the State concludes that the first four references to Harris' testimony, regarding what defendant said to him on July 18, were proper comments on the evidence and that the fifth was not material to her conviction. Alternatively, the State argues that, even if the last two characterizations of Harris' testimony were improper, they did not constitute reversible error.

Contrary to the State's argument, Harris' testimony could *only* be interpreted as meaning that defendant told him the amount of money which Davis had given him but did not tell him that it was all there. It was not merely an unconditional denial that defendant had said "it's all there." It could not be reasonably interpreted as meaning that she said something similar to that or to that effect, as the prosecutors stated the first two times. And it most certainly could not be interpreted as an admission that she did say that, as they argued the last three times they referred to it. As such, the prosecutors' arguments, without exception, were an improper characterization of Harris' testimony.

This fact notwithstanding, we do not believe that defendant is entitled to a new trial. As the State asserts, defendant did not object to these or the other statements during the State's closing arguments of which she now complains, with one exception, nor raise them as grounds for a new trial in her post-trial motion. As such, she has waived any error in these arguments for purposes of appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, *cert. denied* (1988), ___ U.S. ___, 102 L. Ed. 2d 263, 109 S. Ct. 274.) Moreover, because the evidence of defendant's guilt was not closely balanced and because we do not find the alleged errors of such magnitude that they denied defendant a fair trial (*People v. Pugh* (1982), 106 Ill. App. 3d 901, 436 N.E.2d 737), the arguments do not rise to plain error. (107 Ill. 2d R. 615.) In *People v. Eddington* (1984), 129 Ill. App. 3d 745, 473 N.E.2d 103, the court stated, in *dicta*, that a change in the meaning of a conversation between a witness and the defendant in the prosecutor's closing argument was a misstatement of evidence which, in a close case, could be error. (*Eddington*, 129 Ill. App. 3d at 780.) Contrary to the situation in *Eddington* and defendant's assertion in relying upon the plain error doctrine, this was not a close case.

Defendant asserts that the evidence was closely balanced on the central issue of defendant's intentions. However, even assuming that defendant did not say "[I]t's all there," after she counted the money for Harris on July 18, which reasonably could be interpreted as evidencing prior knowledge of Harris' intent to sell drugs and his price

therefor, defendant's argument ignores the record evidence of the July 18 sale and the reasonable and logical inferences therefrom. As that evidence and the inferences therefrom amply supported a finding of defendant's guilt of the July 18 offense, the mischaracterization of Harris' testimony did not rise to plain error. *People v. Bracy* (1986), 152 Ill. App. 3d 566, 504 N.E.2d 764.

Agent Davis testified that, when he walked up to the auto in which Harris, defendant and the unidentified male arrived at the forest preserve parking lot on July 18, defendant's window was open. And, when Harris displayed to Davis the two clear plastic bags containing a white powder, defendant, who was in the front passenger seat less than two feet away, was observing them. Moreover, after displaying the bags to Davis, Harris stated that each bag contained an ounce of cocaine. Then, while Davis tested the contents of one of the bags, defendant was turned facing in Davis' direction. When Davis gave Harris some money after testing the powder, Harris handed it to defendant and asked her to count it. This defendant proceeded to do and while she was doing so, Davis tested the contents of the second bag. When Davis finished testing the powder, defendant handed what she then knew to be $3,600 to Harris and told him, according to Harris, the amount of the money. Finally, while defendant was still in the front passenger seat about two feet away from Harris and Davis, Harris told Davis that if he was satisfied with the cocaine, he and his supplier could sell Davis five or eight ounces more and Davis responded that he would call him later that night to let him know.

This evidence conclusively reveals, whether directly or inferentially, and contrary to defendant's protestations of an abiding ignorance of what Harris was up to, that she must have known that he was selling illegal drugs, specifically cocaine, no later than the point in time when she agreed to count the money Davis had given him. Defendant was not required to prove herself innocent. However, in the face of this evidence, we believe that she was obligated to come forward with some evidence that she did not hear that which she most reasonably could be assumed to have heard, unless she were profoundly deaf, and that she did not see that which she most reasonably could be assumed to have seen, unless she were totally blind. Instead, this evidence remained uncontradicted and unimpeached and, in fact, was at least partially corroborated by Harris.

Having realized by the time that Harris handed her the money received from Davis that Harris was selling drugs, defendant did not protest, for instance, that she wanted no part of what was going on or had no idea what Harris was going to do. Instead, she agreed to

count the money and did so while Davis again tested a white powder Harris had already identified as cocaine. This conduct of defendant, after seeing and hearing what the jury could reasonably infer she had seen and heard, met the requirements of legal accountability, on which the jury was instructed, for the July 18 offense beyond a reasonable doubt. That is, by counting the money after learning what she had, she clearly aided Harris in the commission of what she then had to know was a criminal offense with the necessary intent, *viz.*, to facilitate its commission. (Ill. Rev. Stat. 1985, ch. 38, par. 5—2.) In view of the overwhelming evidence supporting this conclusion, the prosecutors' misstatements of Harris' testimony did not rise to plain error. See *People v. Hudson* (1985), 137 Ill. App. 3d 606, 484 N.E.2d 1246.

Defendant also asserts that the prosecutors improperly: (1) argued Harris was a wholesaler of drugs, not just a street dealer; (2) in this regard, referred to evidence of the purity and street value of the cocaine sold to Davis; (3) referred to media portrayals of the manner in which drug dealers operate; and (4) emphasized the danger to police officers when arresting drug dealers generally and, by referring to Paul Harris' attempt to use a gun on August 1, in this case specifically.

In view of the overwhelming evidence of guilt as to the July 18 offense and the fact that it supported, as a reasonable inference therefrom, a finding that defendant participated in the August 1 sale with the necessary criminal knowledge and intent, the remaining improprieties alleged in the prosecutors' closing arguments also fail to rise to plain error. They were not a material factor in the jury's verdicts. See *People v. Davis* (1976), 38 Ill. App. 3d 411, 347 N.E.2d 818; *People v. Delk* (1976), 36 Ill. App. 3d 1027, 345 N.E.2d 197.

For all of the foregoing reasons, defendant's convictions are affirmed.

Affirmed.

RIZZI and CERDA, JJ., concur.